SOUTHERN PAC. R. CO. v. GROECK et al.

(Circuit Court, S. D. California. May 18, 1896.)

No. 347.

RAILROAD LAND GRANTS—SELECTION OF LANDS—LACHES.

A grant of land was made to a railroad company, by act of congress, in July, 1866. In January, 1867, the company located the general route of its road, and filed the map thereof, but did nothing towards definitely locating its road until 1888, when it constructed the road, and did not file the map of the definite location until April, 1889. In the meantime, in September, 1885, one G. settled on certain lands within the indemnity limits of the grant, and was allowed by the officials of the land office to file his declaratory statement therefor, at that time, and to enter and pay for the land in June, 1886, receiving a patent therefor in April, 1890. The railroad company made no attempt to select such land until December, 1891, and waited until February, 1892, before bringing suit against G. to cancel his patent and recover the land. *Held* that, in the absence of excuse for such delay, the railroad company was guilty of such laches as to bar it from relief in equity against G.'s adverse claim, notwithstanding the land, at the time G. settled on it, was withdrawn from settlement.

Wm. Singer, Jr., and W. F. Herrin, for complainant.
W. B. Wallace and Joseph H. Call, for defendants.

ROSS, Circuit Judge. To the original bill in this case a demurrer was sustained, upon the ground that the bill showed upon its face such laches on the part of the complainant as precluded it from the recovery sought. Railroad Co. v. Groeck, 68 Fed. 609–617. Leave was, however, given the complainant to amend its bill, and accordingly it filed an amended bill, to which the respondents interposed a plea, which the complainant caused to be set down for argument, and which has been argued and is now for disposition. For the purpose of disposing of the plea, the court must assume, without proof on either side, the facts to be as set out in the bill, where not controverted by the plea, and, where so controverted, or inconsistent, to accept as true the contradictory and inconsistent allegations of the plea, together with such additional facts as are therein set out. U. S. v. California & O. Land Co., 148 U. S. 31–39, 13 Sup. Ct. 458; Farley v. Kittson, 120 U. S. 304–314, 7 Sup. Ct. 534; Rhode Island v. Massachusetts, 14 Pet. 253–258.

The case as now presented is not, in my opinion, as strong for the complainant as when it was last under consideration. As now presented, it shows that, notwithstanding the grant to the complainant, under which it claims the piece of land in controversy, was made by congress July 27, 1866 (14 Stat. 292), and that the complainant, on or before the 3d day of January, 1867, located the general route of the road it was authorized to build by the act

making the grant, and filed with the secretary of the interior a map, on that day, showing the general route of the road as located, which map was accepted by the secretary, and on the same day transmitted by him to the commissioner of the general land office, to be filed in that office, which was done on the same day, yet the complainant did nothing towards definitely locating that portion of its road opposite the land in controversy prior to the year 1888, and never attempted to select the land in controversy until December 31, 1891, for which long delay the bill, as amended, affords no excuse. It appears, from the bill, as amended, that the piece of land in controversy, which is within the indemnity limits of the grant, is opposite that section of the complainant's road extending from Huron westerly to Alcalde, and that that portion of the road was not constructed until the year 1888, and that the complainant never filed a plat in the general land office showing the definite location of that portion of its road until April 2, 1889, years after the defendant Groeck went upon the land, claiming the right of settlement, and had been allowed by the officers of the land department to enter and pay for it, and but little more than one year before the government issued to him its patent therefor. True, the land was not, at the time, subject to Groeck's settlement, for the reason that it then stood withdrawn from such settlement or sale for the benefit of the complainant; but the complainant was then sleeping upon its rights, and continued to sleep upon them until February 11, 1892, when it commenced this suit. The question, therefore, remains whether the facts alleged do not disclose such laches on the part of the complainant as makes it proper for a court of equity to withhold its aid. A decree in its favor would be, in effect, to hold that the complainant, without any reason or excuse therefor being shown, was entitled to tie the hands of the government, the government being passive, and therefore consenting, and exclude from all the odd sections within what might prove to be the indemnity limits of its grant all persons who might seek a settlement thereon, for a period extending from the date of its grant, July 27, 1866, until the year 1888, without in any way indicating the definite location of its road,—a period of more than 21 years; and that it could continue to wait until April 2, 1889, before filing in the office of the commissioner of the general land office a map showing its definite location, and until December 31, 1891, before attempting to exercise its right of selection, and until February 11, 1892, before instituting suit to establish its claim to a piece of land falling within the indemnity limits of its grant, as fixed by the final and definite location of its road, as against one who settled upon it on the 2d day of September, 1885, and for which he was allowed by the officers of the local land office to file his declaratory statement on September 7, 1885, and which he was allowed by the officers of the land department to enter and pay for June 7, 1886, and for which the government issued to him its patent April 11, 1890.

The bill, as amended, shows that the section of the complainant's road opposite the land in controversy was constructed prior to the

filing in the general land office of a map showing its definite location, but, so far as appears, nothing whatever was done by the complainant tending to indicate the definite location of that section of the road until the year 1888, during which year it was constructed. The bill, as amended, does not show that this long delay of the complainant in indicating the definite location of that part of its road opposite the land in controversy was in any respect caused by any failure or neglect on the part of the government or of any of its officers, nor does it show any excuse for waiting, after the construction of that portion of its road in 1888, until December 31, 1891, before making any attempt to select the piece of land in controversy, nor for waiting until February 11, 1892, before bringing this suit. The fact, as made to appear by the pleadings now before the court, that the complainant actually constructed its road before filing with the commissioner of the general land office a map showing its definite location, would seem to indicate quite clearly that the complainant treated the map of its general route there filed on the 3d day of January, 1867, as its map of definite location. At all events, it was the business of the complainant to fix definitely the location of its road, and to indicate that line by a map filed in the general land office. Neither the government nor any other company or individual could do so for the complainant. The delay and neglect in that regard was the delay and neglect of the complainant, and of nobody else. In this aspect of the case, it is unimportant that, when Groeck settled upon the land, on September 2, 1885, claiming the right to pre-empt it, the land was not legally open to settlement, because withdrawn from such settlement or sale for the benefit of the complainant company. The fact remains that Groeck did enter upon it under an adverse claim to the complainant, and that his claim was recognized by the officers of the land department of the government, and that, notwithstanding those facts, the complainant continued to sleep upon its rights for more than six and a half years before appealing to the court for relief,—a period considerably longer than that prescribed by the statute of California for the bringing of an action for the recovery of real property. Code Civ. Proc. Cal. §§ 318, 319, 343, 738.

It is true that the laches of which the complainant was guilty prior to Groeck's settlement is no concern of his, and that, if the government was content, no third party has the right to complain; but certainly he is entitled to avail himself of such laches as occurred subsequent to the commencement of his adverse claim,—a claim which existed uncontested for more than six and a half years. While the statutes of limitations applicable to actions at law do not apply to suits in equity, courts of equity are governed by the analogy of such statutes. Norris v. Haggin, 136 U. S. 386, 10 Sup. Ct. 942. "A court of equity," said Lord Camden, "has always refused its aid to stale demands, where the party slept upon his rights, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is pas-

sive, and does nothing. Laches and neglect are always discountenanced; and therefore, from the beginning of this jurisdiction, there was always a limitation to suits in this court." This doctrine has been repeatedly recognized and acted on by the supreme court. Curtner v. U. S., 149 U. S. 676, 13 Sup. Ct. 985, 1041; Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. 610, and cases there cited.

An order will be entered sustaining the plea, with leave to the complainant, if it shall be so advised, to reply to the plea, and take issue in respect to the matters of fact therein alleged, within 20 days from this date.