SOUTHERN PAC. R. CO. v. GROECK et al.

(Circuit Court of Appeals, Ninth Circuit. May 2, 1898.)

No. 398.

1. RAILROAD LAND GRANTS—WITHDRAWAL OF LANDS—PRE-EMPTION.
    No valid pre-emption can be made of lands which have been withdrawn from settlement and sale by the officers of the land department; and even if the order of withdrawal is subsequently canceled, and a patent then issues, no title passes, for the acts of the settler were in violation of law, and void.

2. SAME—WITHDRAWAL BY OPERATION OF LAW.
    The act of July 27, 1866, § 3, granting lands to aid in the construction of the Southern Pacific Railroad Company, of itself operated to withdraw from settlement the lands lying within the indemnity as well as the grant limits, from the date of filing of the map of the general route; and the secretary of the interior had no power to affect the grantee's rights, or to authorize a pre-emption settlement on the lands, by subsequently canceling his order withdrawing the lands from settlement.

3. SAME—FORFEITURE OF LAND GRANT—POWER OF SECRETARY OF INTERIOR.
    Delay in constructing the road, beyond the time limited by law, gives the secretary of the interior no authority to reopen the lands to settlement by canceling his order of withdrawal. A forfeiture of the railroad grant can be declared by congress alone.

4. SAME—LACHES OF GRANTEE.
    Where the granting act of itself operates to withdraw from settlement lands lying within the indemnity limits as well as within the grant limits (as in the case of the grant of 1866 to the Southern Pacific Railroad Company), laches is not imputable to the grantee, because of delay in completing its road and making its indemnity selections, in a contest with one who has attempted to make a pre-emption entry after the filing of the map of general route.

Appeal from the Circuit Court of the United States for the Southern District of California.

William F. Herrin, John Garber, and William Singer, Jr., for appellant.

W. B. Wallace, for appellees.

Before GILBERT and MORROW, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The Southern Pacific Railroad Company brought suit against the appellees to obtain a decree that the appellees hold in trust a patent which Otto Groeck received from the United States to a certain tract of land, which it is contended was land granted by the United States to the railroad company by the act of date July 27, 1866. Section 18 of said act authorized the appellant to construct the railroad which now extends from San Francisco, by way of Mojave, to the Needles on the Colorado river. Section 3 provided as follows:

"That there be, and hereby is, granted * * * every alternate section of public land, not mineral, designated by odd numbers, to the amount of * * * ten alternate sections of land per mile on each side of said railroad whenever it passes through any state, and whenever on the line thereof the United States have full title * * * at the time the line of said railroad is designated by a plat thereof, filed in the office of the commissioner of the general land office; and whenever, prior to said time, any of said sections or parts of sections shall have been granted, sold, reserved, occupied by homestead settlers, or pre-empted, or otherwise disposed of, other lands shall be selected by said company in lieu thereof, under the direction of the secretary of the interior, in alternate sections, and designated by odd numbers, not more than ten miles beyond the limits of the said alternate sections."

Section 6 of the act provided as follows:

"That the president of the United States shall cause the land to be surveyed for forty miles in width on both sides of the entire line of said road after the general route shall be fixed, and as fast as may be required by the construction of said railroad, and the odd sections of land hereby granted shall not be liable to sale or entry or pre-emption before or after they are surveyed, except by said company, as provided in this act."

The bill alleges that the appellant accepted the terms of the grant, fixed the general route of its road as contemplated by the act, and on January 3, 1867, filed a map thereof in the office of the commissioner of the general land office; that on that date the commissioner accepted and approved the map and the route designated by it, and on March 22, 1867, under the direction of the secretary of the interior, he withdrew the odd sections of land lying within 30 miles of the line of road from sale or location, pre-emption or homestead entry; that on November 2, 1869, the secretary of the interior made an order declaring the withdrawal revoked; that on December 15, 1869, the secretary suspended his order of November 2d; that on July 26, 1870, the secretary restored the withdrawal of March 22, 1867; that on August 15, 1887, the secretary declared the withdrawal of March 22, 1867, revoked, as to the indemnity sections thereof; that the appellant commenced to build its road during the year 1870, and completed the construction in different sections between that date and the year 1889,—the last section, extending from Huron westerly to Alcalde, having been constructed during the year 1888; that the land in suit is opposite to, and coterminous with, that section, and is within the indemnity limits of the grant, and is not included in any exception therefrom; that on September 2, 1885, the appellee Groeck settled on the land in controversy, and during the same month filed his pre-emption claim therefor in the proper land office of the United States, and thereafter complied with the land-office regulations, and on June 7, 1886, made pre-emption proof and payment for the land; that on April 11, 1890, patent was issued from the United States, conveying the land to him; that, as the appellant's road was constructed in several sections, such sections were examined by commissioners appointed by the president, as provided by section 4 of the act, and that said commissioners reported that such sections had been completed as required by the act, and thereupon the president accepted and approved the reports; that a map of the definite location of said section between Huron and Alcalde was filed with and approved by

the secretary of the interior on April 2, 1889, and the president accepted and approved the commissioners' report on that section on November 8, 1889; that on July 13, 1891, the appellant, acting under the direction of the secretary of the interior, selected the land in suit, as granted to it by the act. To the bill of complaint the appellees filed a plea asserting the validity of Groeck's pre-emption, and the title thereby acquired, and further alleging that in any event the appellant, "by its long delay in asserting any claim to said land, in filing its map of definite location, and in offering to select said land, is barred by its laches from asserting claim thereto." Upon the plea so interposed the court denied the right of the appellant to the relief prayed for, upon the ground of its laches, and decreed that the bill be dismissed. The questions presented upon the appeal are: First, was the land in controversy lawfully subject to the pre-emption entry of Groeck? and, second, is the appellant's right to the relief sued for barred by its laches, as alleged in the plea?

The land in controversy was at the time of the entry by Groeck, and at the time when he took steps to acquire title thereto, withdrawn from settlement by the act of the secretary of the interior. It was land to which section 2258 of the Revised Statutes applied, in declaring that:

"The following classes of lands, unless otherwise specifically provided by law, shall not be subject to the rights of pre-emption, to wit: First, lands included in any reservation by any treaty, law, or proclamation of the president, for any purpose."

It is true that in 1891, at the time when patent issued, the order of withdrawal of March 22, 1867, had been set aside by the secretary of the interior; but, as we understand the decision of the supreme court in the case of Riley v. Welles, 154 U. S. 578, 14 Sup. Ct. 1166, no valid pre-emption could be made of lands which were withdrawn from settlement by the officers of the land department, and such entry, if made, could not become the basis of title, even upon the subsequent cancellation of the order of withdrawal, since the acts of the settler upon such lands were acts done in violation of law, and void. This was held in a case in which "it was afterwards found that the law by reason of which this action was taken did not contemplate such a withdrawal." Wood v. Beach, 156 U. S. 550, 15 Sup. Ct. 410. But it is urged that the act of withdrawal was a ministerial act upon the part of the secretary of the interior, such as could be set aside at any time by that officer, and that to permit a pre-emption entry to be made, as was done in this case, and to recognize its validity, was, in effect, to set aside the order of withdrawal, and was tantamount to a cancellation thereof, so far as it included the particular lands so entered. The case of Riley v. Welles may be cited likewise in opposition to this contention. But it is not necessary to rest the question of the appellees' title upon the doctrine of that case alone. A careful consideration of other decisions of the supreme court determining the nature of the right which the grantee of such a grant acquires to lands within the indemnity limits, prior to the time when definite location and

selection of lieu lands is made, leads us to the conclusion that, in the case of a grant such as that now under consideration, by the operation of the terms of the grant itself the indemnity lands are withdrawn from settlement from the moment when a map of the general route of the road is made and filed. It may be deduced from those decisions that the grant to the appellant conferred upon the grantee, within the indemnity limits, more than the mere right to initiate a title by selection, and that the lands in the indemnity limits are as truly granted lands, within the terms of the act, as are the lands within the place limits. The difference is in the preliminary steps which are requisite to attach the title to the particular tracts which are granted. Thus, the supreme court has held that, when the lands within the indemnity limits are all needed to make up the granted quantity, the grant to the indemnity lands takes effect at the same time, and is of the same nature, as the grant of the lands in the place limits. St. Paul & S. C. R. Co. v. Winona & St. P. R. Co., 112 U. S. 720, 726, 5 Sup. Ct. 334. In St. Paul & P. R. Co. v. Northern Pac. R. Co., 139 U. S. 1, 11 Sup. Ct. 389, answering the objection that no evidence was offered showing a selection of lieu lands, the court said:

"It is sufficient to observe that all the lands within the indemnity limits only made up in part for those deficiencies. There was therefore no occasion for the exercise of the judgment of the secretary of the interior in selecting from them, for they were all appropriated."

But, where the lands in the indemnity limits exceed the total quantity which is granted by the act, they remain afloat until selection is made as required by the act. In Buttz v. Railroad Co., 119 U. S. 55, 7 Sup. Ct. 100, Mr. Justice Field, referring to section 6 of the Northern Pacific Company's act, said:

"The act of congress not only contemplates the filing by the company in the office of the commissioner of the general land office of a map showing the definite location of the line of its road, and limits the grant to such alternate odd sections as have not at that time been reserved, sold, granted, or otherwise appropriated, and are free from pre-emption, grant, or other claims or rights, but it also contemplates a preliminary designation of the general route of the road, and the exclusion from sale, entry, or pre-emption of the adjoining odd sections within forty miles on each side until the definite location is made."

In Northern Pac. R. Co. v. Musser-Sauntry Land, Logging & Manufacturing Co., 168 U. S. 608, 611, 18 Sup. Ct. 205, 206, the court said:

"But beyond the significance of the word 'reserved,' alone, there are other words in the act which, taken in connection with it, make it clear that these lands do not fall within the grant. 'Otherwise appropriated' is one term of description, and evidently when the withdrawal was made in 1866 it was an appropriation of these lands, so far as might be necessary for satisfying that particular grant. It is true, it was not a final appropriation, or an absolute passage of title to the state or the railway company, for that was contingent upon things thereafter to happen—First, the construction of the road; and, second, the necessity of resorting to those lands for supplying deficiencies in the lands in place; still, it was an appropriation for the purpose of supplying any such deficiencies."

Continuing, on page 611, 168 U. S., and page 207, 18 Sup. Ct., the court said:

"Neither is it intended to question the rule that the title to indemnity lands dates from selection, and not from the grant. All that we here hold is that when a withdrawal of lands within indemnity limits is made in aid of an earlier land grant, and made prior to the filing of the map of definite location by a company having a later grant,—the latter having such words of exception and limitation as are found in the grant to the plaintiff,—it operates to except the withdrawn lands from the scope of such later grant."

In U. S. v. Southern Pac. R. Co., 146 U. S. 570, 600, 13 Sup. Ct. 152, 158, the court said:

"When the general route of the road is thus fixed in good faith, and information thereof given to the land department by filing a map thereof with the commissioner of the general land office or the secretary of the interior, the law withdraws from sale or pre-emption the odd sections, to the extent of forty miles on each side. The object of the law in this particular is plain. It is to preserve the land for the company to which, in aid of the construction of the road, it is granted."

In the case of Wood v. Beach, 156 U. S. 548, 15 Sup. Ct. 410, the land which was in controversy lay within the indemnity limits of two railroad grants,—a grant to the Leavenworth, Lawrence & Galveston road, and a grant to the Missouri, Kansas & Pacific Railway. Act July 26, 1866. Wood made a homestead entry prior to the selection of the lands in the indemnity limits by the railroad companies, but years after the lands had been withdrawn from sale, preemption, or homestead entries, under two orders of withdrawal,—one for each company. In construing section 4 of the act granting lands to aid the construction of the second road, in which it was provided "that as soon as said company shall file with the secretary of the interior maps of its line, designating the route thereof, it shall be the duty of said secretary to withdraw from the market the lands granted by this act in such manner as may be best calculated to effect the purposes of this act and subserve the public interest," the court said, "These withdrawals were not merely executive acts, but the latter one, at least, was in obedience to the direct command of congress." If such withdrawal takes place by operation of law, as has been said by the supreme court in these decisions, the secretary of the interior is powerless to affect the rights of the grantee by setting aside his order of withdrawal. Nor does he acquire such power from the fact that the period has expired within which the grantee is required to complete the road. The expiration of the time so limited by law for the construction of the road is a matter which rests between congress and the grantee. The delay may afford congress excellent reason to declare the land grant forfeited, but congress alone has the power to declare such forfeiture. After such lands have once been set aside by congressional act, no authority is vested in the secretary of the interior, or in any officer of the land department, to restore them, or open them to settlement. Nor is any right conferred upon a pre-emption settler to take advantage of such default of the grantee.

It follows from the rulings of the supreme court in the decisions to which we have referred that the plea of laches cannot avail the appellees. The laches is said to consist in the long delay of the railroad company in constructing the road and selecting the indemnity lands. We are unable to perceive how that delay has conferred rights upon the pre-emption settler, or how it now affords him ground

to impute inequity to the company.    The company owed no duty to any intended settler upon the public domain.    The United States did not offer this land to Groeck, nor did it invite his occupancy or entry. He was a trespasser on the premises.    His pre-emption entry was not only void, but it was unlawful.    Neither such an entry, nor the payment of the purchase price, nor the issuance of the patent, could place him in a position to plead laches, as against the title asserted by the railroad company.    Said the court in Wood v. Beach:

"It is clear that Mr. Wood acquired no equitable rights by his occupation and settlement.    He went upon lands which were not open to homestead or pre-emption entry, and cannot make his unauthorized entry the foundation of an equitable title."

The appellees cite and rely upon the cases of Railroad Co. v. Herring, 110 U. S. 27, 3 Sup. Ct. 485, and Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873.    In the first of these cases the grant to the railroad company provided for the withdrawal when a map definitely showing the line of road should be filed.    The map was not filed until three years and a half after the passage of the act.    During this period homestead and pre-emption entries were made.    The court held that no obligation rested upon the government to withdraw the lands from sale until the grantee filed a map in the general land office, definitely showing the entire line of its road, and that in the meantime the lands were open to pre-emption and homestead entry.    It is readily seen that the facts in that case clearly distinguish it from the case at bar.    In Galliher v. Cadwell it was said by the court:

"Laches is not, like limitation, a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced,—an inequity founded upon some change in the condition or relations of the property or the parties."

There are no facts in the present case to which that language is applicable.    The appellant and Groeck were not in the attitude of persons to whom the land in controversy was offered upon equal terms, giving to the first entryman the prior right.    It was offered only to the railroad company.    The facts stated in the bill and in the plea are insufficient to show that the company has in any respect dealt inequitably with Groeck.    This is not a case in which it has delayed enforcing its rights to the detriment of another.    The delay in constructing the road and in selecting the lieu lands has worked no wrong to Groeck.    So long as the United States made no complaint of the delay, no equity was created thereby in favor of any intending settler.    And no such settler could take it upon himself to say that the grantee had forfeited any of the rights specified in the grant. The company was not required to give Groeck notice of its rights in the premises.    He was bound to take note of the law, which itself gave him notice.    In short, no facts exist on which laches may be imputed to the railroad company for any delay upon its part short of the statutory period of limitation whereby its right to obtain the relief sued for would be absolutely barred.    The suit was brought within less than three years after definite location, which was the earliest time when selection could have been made, in less than two

years after the issuance of Groeck's patent, and within less than one year after selection was made. The decree will be reversed, and remanded to the circuit court for further proceedings not inconsistent with this opinion.