SOUTHERN PAC. R. CO. v. GROECK et al.

(Circuit Court, S. D. California. April 3, 1899.)

No. 374.

PUBLIC LANDS—SOUTHERN PACIFIC RAILROAD GRANT.
Under the resolution of congress of June 28, 1870 (16 Stat. 382), which authorized the Southern Pacific Railroad Company to construct its road and telegraph line as nearly as might be on the route shown by the map theretofore filed by it in the interior department, and provided that upon the construction of each section, and its inspection and approval, a patent should be issued under the act of July 27, 1866 (14 Stat. 292), making a grant of lands to aid in the construction of the road, for the lands embraced within the grant and coterminous with the completed sections, the failure of the company to complete one section of the line does not affect its rights under the grant to the lands opposite to and coterminous with the completed sections, which include the right to select indemnity lands along such sections and within the indemnity limits.

This was a suit in equity by the Southern Pacific Railroad Company against Otto Groeck and others to recover certain land, claimed under a grant made by congress, and held by defendant Groeck under a patent subsequently issued to him by the land department therefor.

Wm. Singer, Jr., for complainant.
W. B. Wallace, for defendants.

ROSS, Circuit Judge. In its different stages this case has been three times under the consideration of this court, and once by the circuit court of appeals for this circuit. 68 Fed. 609; 74 Fed. 585; 31 C. C. A. 334, 87 Fed. 970. It was first presented to this court on demurrer to the original bill; next, upon a plea filed by the defendants to the amended bill, which the complainant caused to be set down for argument, and which was thereafter argued, submitted, and disposed of by the opinion reported in 74 Fed. 585; and then upon a plea interposed by the defendants to the second amended bill, which the complainant likewise caused to be set down for argument, and which was thereafter argued and submitted, resulting, for the reasons given in the former opinion, in an order sustaining the plea, with leave to the complainant, if it should be so advised, to reply to the plea, and take issue in respect to the matters of fact therein alleged. 93 Fed. 991. A replication was thereafter filed by the complainant, and an agreed statement of facts entered into by the respective parties, upon which, together with the second amended bill of complaint and the answer thereto, the case is now submitted for final decision. The subject in controversy is a piece of land which was settled upon by the defendant Groeck on the 2d day of September, 1885, as government land, and which he was, against the protest and after a contest by the complainant, permitted by the land department to enter as such, and for which a patent was issued to him by the government of the United States on the 11th day of April, 1890. The complainant, claiming to be entitled to the land by virtue of a congressional grant, seeks by the suit to obtain a decree that the title conveyed by the patent to Groeck is held in trust for it, to compel the conveyance thereof to the

complainant, and to enjoin the defendants from asserting any title thereunder.

The grant under which the complainant claims the land is that of July 27, 1866 (14 Stat. 292), by which, among other things, the Southern Pacific Railroad Company was authorized to connect with the Atlantic & Pacific Railroad at such point, near the boundary line of the state of California, as it should deem most suitable for a railroad line to San Francisco, and, subject to certain conditions, exceptions, and limitations, was granted every alternate section of public land, not mineral, designated by odd numbers, to the amount of 10 alternate sections per mile on each side of said road, to which the United States should have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights at the time such road should be designated by a plat thereof filed in the office of the commissioner of the general land office; and where, prior to said time, any of said sections or parts of sections should be granted, sold, reserved, occupied by homestead settlers, pre-empted, or otherwise disposed of, the act provided that other lands should "be selected by said company in lieu thereof under the direction of the secretary of the interior, in alternate sections designated by odd numbers, not more than ten miles beyond the limits of said alternate sections, and not including reserved numbers." The original bill alleged, among other things, that on the 24th day of November, 1866, the complainant, by its board of directors, accepted the grant upon the terms and conditions contained in it, which acceptance was filed with the secretary of the interior December 27, 1866, and that on the 3d day of January, 1867, complainant filed with the secretary a map of the route of its road, as located and surveyed, which map was accepted by the secretary, and on the same day transmitted by him to the commissioner of the general land office to be filed in that office, which was done on that day; that on the 22d day of March, 1867, the commissioner transmitted a copy of the map to the register and receiver of the local land office at Visalia, Cal., in which district the land in controversy is situated; and that the register of the local land office acknowledged its receipt by letter of date March 30, 1867. The original bill also set forth the joint resolution of congress of June 28, 1870 (16 Stat. 382), by which complainant was authorized to "construct its road and telegraph lines, as near as may be, on the route indicated upon the map filed by said company in the department of the interior on the 3d day of January, 1867," and alleged that the road was completed by the complainant upon the line as shown upon that map, and, as constructed, ran through Tulare county, which is within the district of lands subject to sale at Visalia, Cal., and was completed within the time limited by the acts of congress, which fact was duly reported to the president, and by him accepted and approved; that the land in controversy is more than 20, but within 30, miles of the complainant's road as so located and constructed, and that when its route was definitely fixed the said land had not been granted, sold, reserved, occupied by homestead settlers, pre-empted, or otherwise disposed of or appropriated by the United States for any purpose, but that the United States then had full title thereto;

that the entire indemnity limits along the grant to the complainant
are insufficient to supply the losses sustained by it within the granted
limits; and that the commissioner of the general land office, in his
annual report to the president and to the interior department for the
year 1883, "has attested and certified to the fact that the land within
the indemnity limits of said act of July 27, 1866, will by no means
supply the loss of lands within the twenty-mile limits to said rail-
road company under said act." The original bill further alleged that
on the 13th of July, 1891, complainant selected the land in contro-
versy in its indemnity list No. 43, at the land office in Visalia, which
office refused to approve the selection, although complainant offered
all the fees for the purpose of listing, selecting, and securing a patent
of the land, and that a like refusal has been made by the commissioner
of the general land office and by the secretary of the interior. Simi-
lar allegations were made in both the amended and second amended
bills.

This court held, in the opinions referred to, that upon the filing
by the complainant in the general land office of its map of the gen-
eral route of the road authorized to be built, the granting act itself
operated to withdraw the lands within the indemnity, as well as the
primary, limits of the grant, from sale or other disposition, for the
benefit of the grantee; that the piece of land in controversy, being
within the indemnity limits of the grant to complainant, was not
subject to settlement by Groeck; and that therefore the action of the
officers of the land department, awarding and patenting the land to
him, was erroneous. That ruling of this court was sustained by the
circuit court of appeals in the opinion reported in 31 C. C. A. 334,
87 Fed. 970, and as it then appeared that the complainant had com-
pleted the road so authorized to be built, and had filed in the general
land office maps showing its definite location, judgment would there-
fore have followed for the complainant as prayed for, but for the fact
that the complainant, having waited nearly 25 years after the with-
drawal of the land in controversy for its benefit, and more than 5
years after the defendant Groeck's adverse entry upon it, before at-
tempting to select the land in controversy, and having waited for
more than another year before instituting suit therefor, the entire
delay and neglect being its own, and in no respect caused by any fail-
ure or neglect on the part of the government or of any of its officers,
it was here held that the complainant was guilty of such laches as
made it proper for a court of equity to refuse its aid; this court
being of opinion that, notwithstanding Groeck's settlement was with-
out right, and notwithstanding the proceedings in the land office
awarding and patenting the land to him were erroneous, there must
always be on the side of a complainant invoking the aid of the equity
powers of a court of justice, not only conscience and good faith, but
reasonable diligence as well. In this latter view the circuit court of
appeals held that this court was in error, and accordingly reversed its
decree, with directions for further proceedings not inconsistent with
its opinion. If, therefore, the facts as now presented be in substance
the same as those considered on the former hearings of the cause, there

will be nothing left for this court to do but to give judgment for the complainant.

On the previous presentation of the cause it appeared that, while the map filed by the complainant in the general land office on the 3d day of January, 1867, was a map of the general route of the road authorized to be built, and while it appeared that it actually constructed the road in sections prior to the filing of any map of its definite location, it also appeared that such map of definite location was filed in the general land office in sections subsequent to the completion of the road. Thus, in the opinion of the circuit court of appeals (31 C. C. A. 334, 87 Fed. 971), that court, in stating the facts, said:

"The appellant [Southern Pacific Railroad Company] commenced to build its road during the year 1870, and completed the construction in different sections between that date and the year 1889; the last section, extending from Huron westerly to Alcalde, having been constructed during the year 1888."

And in the opinion of this court on demurrer to the original bill, reported in 68 Fed. 609, 611, it is said:

"The bill also sets forth the joint resolution of congress of June 28, 1870 (16 Stat. 382), by which complainant was authorized to 'construct its road and telegraph lines, as near as may be, on the route indicated by the map filed by said company in the department of the interior on the 3d day of January, 1867,' and alleges that the road was built by the complainant upon the line as shown upon that map, and, as constructed, ran through Tulare county, which is within the district of lands subject to sale at Visalia, Cal., and was completed within the time limited by the acts of congress, which fact was duly reported to the president, and by him accepted and approved; that the land in controversy is more than 20, but within 30, miles of the complainant's road as so located and constructed, and that when its route was definitely fixed the said land had not been granted, sold, reserved, occupied by homestead settlers, pre-empted, or otherwise disposed of or appropriated by the United States for any purpose, but that the United States then had full title thereto; that the entire indemnity limits under the grant to the complainant are insufficient to supply the losses, sustained by it within the granted limits, and that the commissioner of the general land office, in his annual report to the president and to the interior department for the year 1883, 'has attested and certified to the fact that the land within the indemnity limits of said act of July 27, 1866, will by no means supply the loss of lands within the twenty-mile limits to said railroad company under said act.'"

The agreed statement of facts upon which the case is now submitted shows, among other things: That on January 3, 1867, the complainant filed a map of the general route of the entire railroad which it was, by the act of July 27, 1866, and the joint resolution of congress of June 28, 1870, authorized to construct, in the office of the commissioner of the general land office, and that on that day the secretary of the interior and the commissioner duly accepted and approved the said map, and the general route shown thereon. That the complainant commenced to build its railroad during the year 1870, and completed the construction of that portion thereof extending from San Francisco to Tres Pinos, and from Alcalde to Needles, by way of Goshen and Mojave, in several different sections, prior to the year 1889,—the last section thereof, extending from Huron westerly to Alcalde, being constructed during the year 1888,—and that all of such railroad was constructed along the line shown on the general route

map of January 3, 1867. That the complainant filed maps in several sections of the definite location of said railroad (except that portion between Alcalde and Tres Pinos), along the line shown on the said general route map, being the same line upon which it was constructed, and that the said maps of definite location were accepted and approved by the secretary of the interior on the following dates, to wit: Of the first section thereof, on August 7, 1871; of the second section thereof, October 26, 1871; of the several sections of the road extending from Huron to Mojave, at various dates between January, 1878, and December 31, 1884; and of the section of the road extending from Huron westerly to Alcalde, on April 2, 1889. That, as each of the said sections were constructed, they were examined, respectively, by commissioners appointed by the president of the United States for that purpose, who duly reported to the president that each of the sections had been completed in a good, substantial, and workmanlike manner, in all respects as required by the act of congress; and that the president duly accepted and approved all of those reports. That all of the said reports were so made, accepted, and approved between August 7, 1871, and November 8, 1889, inclusive; the latest being the report upon the section of road extending from Huron to Alcalde, which was accepted and approved, as aforesaid, on November 8, 1889. It further appears from the agreed statement that the piece of land in controversy is situated opposite to and coterminus with this latter section of the complainant's road, and is within 30 miles thereof.

I am of opinion that the joint resolution passed by congress on June 28, 1870 (16 Stat. 382), distinguishes this case from those relied upon by the counsel for the defendants; for that resolution declared that the Southern Pacific Company might construct its road and telegraph line, as near as might be, on the route indicated by the map filed by it in the interior department on the 3d day of January, 1867, and that:

"Upon the construction of each section of said road in the manner and within the time provided by law, and notice thereof being given by the company to the secretary of the interior, he shall direct an examination of each such section by commissioners to be appointed by the president, as provided in the act making a grant of land to said company, approved July 27, 1866, and upon the report of the commissioners to the secretary of the interior that such section of said railroad and telegraph line has been constructed as required by law, it shall be the duty of the said secretary of the interior to cause patents to be issued to said company for the sections of land coterminous to each constructed section reported on as aforesaid, to the extent and amount granted to said company by the said act of July 27, 1866, expressly saving and reserving all the rights of actual settlers, together with the other conditions and restrictions provided for in the third section of said act."

Congress itself thus provided for the building of the complainant's road along the line designated by the map filed by it in the general land office on the 3d day of January, 1867; and the complainant, having so built all of its road along that line, except the portion between Tres Pinos and Alcalde, has earned the public lands situated opposite to and coterminus with the portions so completed within the place limits of the grant, and the right to select within its indemnity limits such of the public lands as are necessary to make good the losses sus

tained by it within the primary limits of the grant. The complainant's failure to build that portion of the road between Tres Pinos and Alcalde is a matter for the consideration of congress. There will be a decree for the complainant.