LENA STANEK v. ALBERT LIBERA and Another.
KATHERINE SNEDA v. Same.

July 1, 1898.

Nos. 11,105—(173).

| 73 | 171 |
|----|-----|
| 83 | 291 |

**Garnishment of Insurer — Fraud in Reducing Oral Agreement to Writing—Reformation and Rescission.**

Garnishee proceedings, under G. S. 1894, § 5319, to hold the garnishee liable as the debtor of the defendants on its policy insuring them against their "employer's liability." *Held*, where parties have entered into a valid oral agreement, but in reducing it to writing, through the fraud of one party, and the mistake of the other, induced thereby, the writing fails to express the actual agreement, this may be ground for reforming the written instrument, but not for rescinding the contract.

**Same—Release of Policy—Finding Sustained by Evidence.**

Evidence *held* sufficient to justify the finding that, at the time the defendant L. delivered to the garnishee a written release of the policy, he had full knowledge of the contents of the instrument.

**Attaching Creditor Cannot Attack Merely because of Fraud on Debtor.**

An attaching creditor is not in privity with his debtor, and cannot attack a transaction solely upon the ground that it was a fraud upon his debtor, although the effect of it may have been to reduce his debtor's ability to pay.

**Same—Equity—Inaction of Debtor.**

Whether equity will ever permit a creditor to reach a fraud upon his

insolvent debtor, which has depleted his assets, where the debtor himself refuses to exercise his right to seek redress, quære?

**Delivery of Release by one Partner Voidable, not Void.**

Assuming, without deciding, that the act of L. in delivering the release of the policy was a fraud upon his partner, defendant M., the act was, as to M., at most, merely voidable at his election, and it rested with him alone to determine whether he would ratify or repudiate the act.

**Same—Attaching Creditors cannot Act for Debtor.**

The plaintiffs, as attaching creditors, are not in position to redress his wrong, and repudiate the act for him.

Plaintiffs Lena Stanek, as administratrix of the estate of Thomas Stanek, and Katherine Sneda, as administratrix of the estate of Joseph Sneda, severally recovered judgments in the district court for Winona county against defendants Albert Libera and John Mlnazek for the deaths of their respective intestates, who were killed while in the employment of defendants. Thereafter garnishee summons was issued in these actions against the Standard Life & Accident Company of Detroit, Michigan, which had insured defendants against liability for accidents to employees. The garnishee appeared, and denied indebtedness. Under order of the court, plaintiffs thereupon served supplemental complaints upon which issues were made up. At the trial the court submitted special questions to the jury for their special verdict, which the jury rendered in each case. The cases were tried together. The court, Snow, J., without further evidence, made its findings of fact and conclusions of law in each case, and ordered judgment discharging the garnishee. From the judgments entered pursuant to such order plaintiffs severally appealed. Affirmed.

*Brown & Abbott,* for appellants.

The jury found, and the court adopted the finding, that the release of the garnishee from its policy of accident insurance was procured from defendants Libera and Mlnazek by the fraud of the garnishee. The trial court substantially held that, defendants having signed the alleged release, no one but defendants could rescind it, and that in order to rescind a restoration of the consideration must be made, which admittedly has not been done. If it would

be necessary for defendants to rescind and restore in order to maintain an action against the garnishee, there would be reason in this position, but this is not the law. Plaintiffs are not attacking a fraudulent conveyance, but deny that defendants ever made any agreement for release, or ever received any money for a release, or did any act requiring rescission. The alleged contract for a release was void ab initio, and not voidable. C. Aultman & Co. v. Olson, 34 Minn. 450; Bishop, Cont. §§ 614, 646; Burroughs v. Pacific Guano, 81 Ala. 255; Kerr, Fraud & M. 49, 50; Benjamin, Sales, § 433.

Defendant Libera was not guilty of negligence or want of ordinary business prudence in relying on the garnishee's representations as to the contents of the alleged release, and in failing to read it, though he had it in his possession for four of five days. Eaton v. Winnie, 20 Mich, 156; Waterhouse v. Jamieson, L. R. 2 H. L. Sc. 29; Foreman v. Bigelow, 7 Cent. L. J. 430. At any rate it does not lie in the mouth of the garnishee to plead such lack of business prudence in order to consummate its fraud, and hold the fruits of it. Maxfield v. Schwartz, 45 Minn. 150; Redding v. Wright, 49 Minn. 322; Erickson v. Fisher, 51 Minn. 300.

Even if Libera knew the contents of the paper when he delivered it to the garnishee's agent, his knowledge did not bind Mlnazek, his partner, who never learned the contents of the release before its delivery. 1 Bates, Partn. §§ 325, 405; Yeager v. Wallace, 57 Pa. St. 365; Gallway v. Mathew, 10 East, 264; Knox v. Buffington, 50 Iowa, 320.

*McLaughlin & Boyesen*, for respondent.

The case at bar is not one where the defrauded party seeks to set aside the instrument, without paying or tendering the consideration received by him thereon, but where his creditors, in garnishee proceedings, are endeavoring to obtain this relief. The consideration received must first be paid or tendered. Parsons v. McKinley, 56 Minn. 464; McMahon v. Plummer, 6 Dak. 42; Johnson v. Merry Mount, 53 Fed. 569; Cobb v. Hatfield, 46 N. Y. 533; McMichael v. Kilmer, 76 N. Y. 36; Schiffer v. Dietz, 83 N. Y. 300; Kreuzen v. Forty-Second, 13 N. Y. Sup. 588.

The release was not void, but at most merely voidable. Johnson v. Merry Mount, supra; Brown v. Brown, 50 N. H. 538; Kellogg v. Curtis, 65 Me. 59; Williams v. Stoll, 79 Ind. 80; 28 Am. & Eng. Enc. 477.

Libera was invested with plenary powers as a partner to execute the release in the partnership name, and on its behalf. Mlnazek's signature or assent was entirely unnecessary. A release by one partner operates as a release by the partnership. 1 Lindley, Partn. (2d Am. Ed.) 146, 169; Christ v. Firestone (Pa. St.) 11 Atl. 395; Crites v. Wilkinson, 65 Cal. 559; Deakin v. Underwood, 37 Minn. 98; King v. Remington, 36 Minn. 15; 17 Am. & Eng. Enc. 995–998.

An instrument, knowingly executed, becomes a strong wall of evidence, not to be lightly overcome by unsatisfactory oral testimony, and, upon grounds of public policy, it is inexpedient to set aside such an instrument for fraud, unless the proof be clear and strong. Roth v. Barrett, 96 Wis, 615; Oxford v. Nichols & Shepherd Co., 57 Minn. 206; Wallace v. Chicago, 67 Iowa, 551; McCall v. Bushnell, 41 Minn. 37; Jenkins v. Clyde, 82 Iowa, 618; Christianson v. Chicago, St. P., M. & O. Ry. Co., 67 Minn. 94; Hazard v. Griswold, 21 Fed. 178; Taylor v. Fleckenstein, 30 Fed. 103; Hawkins v. Hawkins, 50 Cal. 558.

From any standpoint, plaintiffs in this case are in no position to question the release. A fraud which will authorize a creditor to impeach a transaction with his debtor must be a fraud against the creditor, not an overreaching of the debtor. Bump, Fraud. Conv. §§ 18, 28; Johnson v. Bennett, 39 Barb. 237; Buell v. Buckingham, 16 Iowa, 284; McAlpine v. Sweetser, 76 Ind. 78; Goddard v. Guittar, 80 Iowa, 129; Colbern v. Robinson, 80 Mo. 541; Parker v. Roberts, 116 Mo. 657; Kingman v. Perkins, 105 Mass. 111; Sweet v. Converse, 88 Mich. 1; Gumberg v. Treusch, 103 Mich. 543; Fearey v. Cummings, 41 Mich. 376, 384; Thurber v. Blanck, 50 N. Y. 80; Lewis v. Rice, 61 Mich. 97; Dayton v. Fargo, 45 Mich. 153; Treusch v. Ottenburg, 54 Fed. 867; Johns v. Jordan, 59 Kan. 771.

MITCHELL, J.

These were actions or proceedings in garnishment, under G. S. 1894, § 5319.

The supplemental complaints filed by the plaintiffs alleged the following facts, viz.: That the defendants were engaged in the business of contracting and building, which required the employment of servants or employees; that in June, 1894, the garnishee executed to the defendants an employer's liability policy, insuring them for 12 months against liability for damages on account of injuries suffered by their employees, to an amount not exceeding $2,500 on any one employee, and not exceeding $10,000 in the aggregate; that in July, 1894, the plaintiff's intestates were killed while in the employment of the defendants; that on October 19, and November 4, respectively, in 1896, each of the plaintiffs recovered a judgment against the defendants for $3,079.92 for damages caused by such deaths; that they caused summons to be served upon the garnishee, requiring it to appear and answer touching its indebtedness to the defendants; that upon such examination the garnishee denied being indebted to the defendants in any sum whatever, when in fact it was, upon the facts stated, indebted to them on the policy in the sum of $5,000.

It is sufficiently accurate for present purposes to say that by its answer the garnishee admitted all the facts alleged in this complaint, but alleged that in September, 1896, for a valuable consideration by it paid to them, the defendants surrendered the policy, and in writing released it from all liability whatever under and on account of it. A copy of the policy was attached to the answer, from which it appeared that one of its provisions was that the assured should, at the expense of the insurer, render all reasonable assistance in obtaining information relative to injuries and their cause, and in the adjustment of claims and the defense of suits.

In reply to this the plaintiffs denied that the defendants had ever released or agreed to release the garnishee from any of the obligations or agreements contained in the policy; that the actual facts were as follows, to wit: That the garnishee being indebted to the defendants in a large sum for services rendered prior to September, 1896, in defense of these and other actions then being defended by

the garnishee pursuant to the terms of its policy, it and the defendants entered into a contract whereby it was mutually agreed that the garnishee should pay the defendants a specified sum for such services, in consideration of which the defendants should release it from all further claims on account of the services, and deliver the policy to it, and that in consideration thereof the garnishee should relieve the defendants from any further liability by reason of said actions, and take the policy, and settle with the plaintiffs, or successfully defend the actions, and, in case judgment was rendered in any of them against the defendants, pay and satisfy the same in full, and hold the defendants harmless therefrom; that the agent of the garnishee, with whom the agreement was made, presented to the defendants for their signature a paper writing which he represented to them contained the foregoing agreement as made by the parties, and that defendants, trusting in and relying upon this representation, signed the paper, believing that it correctly set out the terms of the agreement as actually made; and that, if it contained any other or different agreement, the same was unknown to the defendants, and was fraudulently inserted by the garnishee's agent.

We have been thus particular in stating the allegations of the pleadings, in order that the nature of the actions, the theory upon which plaintiffs proceeded, and the issues presented, may clearly appear. It is evident that the plaintiffs are seeking to hold the insurance company, as garnishee, solely as the debtor of the defendants on the policy, and that they proceed upon the theory that this policy is still on foot, as a valid and subsisting contract between the insurance company and the defendants. It is also clear that no question of the rescission of any contract is involved in the case. Plaintiffs' reply presents a case where the parties have entered into a lawful oral agreement just as they intended, but in reducing it to writing, through the fraud of one party, and the mistake of the other party caused by such fraud, the written instrument fails to express the real agreement. This might be a good ground for reforming the written instrument, if necessary, but not for rescinding the contract. The element of fraud and mistake did not inhere in the contract itself, but only in the simulated

written evidence of it. This eliminates from the case several of the questions discussed by counsel.

The main question of fact litigated on the trial was, what were the terms of the actual agreement made between the defendants and the insurance company in September, 1896, and, as incident to that, whether the agent of the insurance company fraudulently misrepresented to the defendants the contents of the written instrument, or whether the latter knew and understood its contents when they executed it. This instrument (Exhibit A), dated September 26, 1896, was signed by the firm of Libera & Mlnazek, by the hand of Libera, and by both defendants individually, and purported on its face to be a full release of the insurance company from all liabilities and obligations of every kind on or on account of the policy, for the consideration of $500, the receipt of which was acknowledged.

It appeared in evidence that this instrument, which was prepared by the company's agent, was signed by both defendants at Walnut Grove, where the defendant Mlnazek was then at work, and whither the agent of the company, accompanied by defendant Libera, had gone to procure his signature; that after it was signed it was retained by Libera, who returned with the agent to Winona, and did not deliver it until four or five days afterwards, when the company's agent paid him the $500 named in the instrument, and also an additional $500, which Libera exacted as a condition of his delivery of the instrument.

Certain questions of fact were submitted to a jury (all other issues being reserved for trial by the court), in answer to which they found, in substance, that neither of the defendants knew or understood the contents of Exhibit A when they signed it; that before they signed it the company's agent falsely and fraudulently represented to them that the writing provided that the insurance company would defend or settle the suits against them, and relieve them from all further claims of the plaintiffs involved therein; and that defendants believed these representations, and signed the instrument because of such belief. After adopting as facts these special findings of the jury, the court further found, among other things, that at the time of the delivery of Exhibit A the defendant

73 M.—12

Libera had full knowledge of the contents of the instrument, and surrendered the policy to the company. Upon these findings the court held that the company was not indebted to the defendants, and discharged it as garnishee.

The main contention of the plaintiffs on this appeal is that the finding that Libera knew the contents of the instrument when he delivered it was not justified by the evidence.

Libera's version of the transaction is so improbable and unreasonable that, if we had been a jury or a trial court, we would have had no hesitancy in finding that he knew all about the contents of the instrument, and that the actual agreement between him and the garnishee's agent was that, for the consideration paid to him, the defendants would and did release and surrender the policy. In fact we do not think that the evidence would justify any other conclusion.

It is not difficult to read between the lines that garnishee's agent, foreseeing that the litigation would in all probability soon result in judgments in favor of the plaintiffs and against the defendants for an amount equal to or in excess of the amount of the policy, conceived the idea of anticipating this result, and getting his company released from all liability on the policy, by making a settlement directly with the defendants for a much smaller amount, and let the plaintiffs whistle for the payment of their judgments, and that he induced Libera to become a party to this scheme, by the suggestion that the money paid for a release of the policy would go into his own pocket, whereas otherwise the proceeds of the policy would in all probability be taken to satisfy such judgments as the plaintiffs might recover; also, that he hired or bribed Libera (whichever it may be called), by a promise of an additional sum "on the side," to help the scheme through by inducing his partner, Mlnazek, to join in it. In short, the entire transaction has all the earmarks of a scheme to commit what was at least a moral fraud on the plaintiffs.

What remedy, if any, plaintiffs would have had if they had proceeded on this theory, and attacked the transaction on that ground, we need not inquire. As already suggested, the plaintiffs attempt to hold the company as garnishee, upon the theory that the defend-

ants have never released the policy, either fraudulently or otherwise; that the only fraud was that of the company's agent upon the defendants, in securing their signatures to a written instrument, which, contrary to the actual agreement of the parties to the contrary, purported to be a release and surrender of the policy. And the case was tried throughout upon that theory, and on that issue.

But as against the respondent company, which made no objection to them, the special findings of the jury must on this appeal be accepted as true, and justified by the evidence. Moreover such findings are not merely advisory to the court, but are binding upon it, unless set aside as not supported by the evidence, or for other good cause. But as an instrument does not take effect until delivery, these special findings would be immaterial, if, before delivery of Exhibit A, the defendants obtained full knowledge of its contents, and with such knowledge voluntarily delivered it and accepted the consideration. This brings us back to the question whether the finding of the court to that effect was justified by the evidence.

It appears that Libera was a man of considerable business experience, the holder of several public offices, whose duties required a fair degree of intelligence and business ability; that he had at least sufficient education to read and understand such an instrument; that the instrument was typewritten, and hence easily read. The evidence tends to show that after he and his partner signed it at Walnut Grove, he declined to deliver it at that time, because, as he said, he desired first to consult his attorney in Winona; that he retained it in his possession for several days, during which he was two or three times interviewed by the company's agent, to whom he stated that he had not yet seen his attorney; that at the final interview at which the instrument was delivered he stated that he had seen his attorney, and then insisted on being paid an additional $500 before he would deliver it.

Comment is unnecessary. Whatever might have been his mental condition when he signed the paper at Walnut Grove, this evidence amply justified the court in finding, notwithstanding his statement

to the contrary, that he had subsequently, and before delivery, acquired full knowledge of the contents of the instrument.

2. But it is urged that, even if Libera knew the contents of the instrument when he delivered it, this did not bind his partner, Mlnazek. It is claimed that there is no evidence that the latter ever discovered the contents of the instrument before its delivery; also that both Libera and the company's agent must have known that Mlnazek had signed it not knowing that it was a release of the policy, and supposing that it provided that the insurance company should still remain liable for any judgments which the plaintiffs might obtain against the defendants, and would not have signed the instrument if he had known its contents, and therefore it was a fraud on him for Libera to deliver and the insurance company to accept the release, under the circumstances; that the facts negative any implied agency on part of Libera by reason of the partnership relation to bind his partner, and therefore the delivery only bound Libera himself.

Conceding all this to be true, the act of Libera in delivering the release in behalf of the firm would at most only be voidable, as to Mlnazek, at his election. It rested with him alone to decide whether he would repudiate or ratify the act.

Viewing the transaction merely as a fraud upon Mlnazek, the plaintiffs are not in a position to redress his wrong. There is a manifest distinction between a fraud upon a debtor and a fraud upon his creditors. An attaching creditor cannot assume to represent his debtor. They are not in privity with, but antagonistic to, each other. Attachment or garnishment proceedings are instituted, not to enforce the rights of the debtor, but the rights of the creditor; and the latter cannot attack a transaction solely upon the ground that it was a fraud on his debtor, although the effect of it may have been to reduce the debtor's ability to pay. Wait, Fraud. Conv. § 403; Bump, Fraud. Conv. § 20; Graham v. Railroad Co., 102 U. S. 148; Garretson v. Kane, 27 N. J. L. 208; Dougherty's Estate, 9 Watts & S. 189; Parker v. Roberts, 116 Mo. 657, 22 S. W. 914; Lewis v. Rice, 61 Mich. 97, 27 N. W. 867; Colbern v. Robinson, 80 Mo. 541; McAlpine v. Sweetser, 76 Ind. 78; Goddard v. Guittar, 80 Iowa, 129, 45 N. W. 729; Johns v. Jordan, 59 Kan. 771, 51 Pac. 889.

We need not consider how far, if at all, equity would permit a creditor to redress a fraud against his insolvent debtor which has depleted his assets, when the debtor himself refused to exercise his right to seek redress. We have no such case before us.

While the assignments of error are somewhat numerous, what has been said covers most of them, and renders the remainder immaterial, and the result is that the judgment must be affirmed.

It is so ordered.