UNITED STATES v. CHICAGO, M. & ST. P. RY. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. June 16, 1902.)

No. 1,740.

1. PUBLIC LANDS—SUIT BY UNITED STATES FOR CANCELLATION OF PATENT—DEFENSES.

Where a patent has been issued to a railroad company for land to which an individual had acquired a prior right under the homestead law, the United States is under an obligation to convey the land to the rightful claimant, which entitles it to maintain a suit to cancel the patent, but in such suit, which is in fact one between private parties, involving no public interest or right, the court may properly take into consideration the equities as between the real parties in interest.

2. SAME—SUIT FOR BENEFIT OF PRIVATE PERSON—DEFENSE OF LACHES.

At the time of the passage of an act making a railroad grant, and of the withdrawal thereunder of the lands within its limits from entry, a certain tract within the indemnity limits was covered by a valid

homestead filing. This filing was subsequently canceled on a contest, and the contestant then sought to file a homestead claim thereon, but was denied the right, by the local land office, on the ground that the land had been withdrawn under the railroad grant. The land was afterward selected by the railroad company as indemnity land, and was patented as such, and sold by the company to a purchaser who had no knowledge or notice of the homestead claim, which was not of record. After the purchaser and his grantees had been in possession for 16 years, and had paid for the land, suit was brought, by the United States against the railroad company and its grantees, to cancel the patent, for the benefit of the homestead applicant. It was 30 years after the original sale of the land by the company before subpœna in the suit was served on its grantees. Under the statute of the state, an action at law to recover land was defeated by 15 years' adverse possession. *Held*, that the knowledge of the homestead claimant of the existence of his claim during the years the land was held by defendants was attributable to the United States, and that its right to maintain the suit in his interest was barred by laches.

Appeal from the Circuit Court of the United States for the District of Minnesota.

On March 6, 1893, the United States filed their bill of complaint in the above action against the Chicago, Milwaukee & St. Paul Railway Company, the Southern Minnesota Railway Company, Michael Donovan, Thomas S. Thompson, and O. C. Erichsrud. Service of subpœna was made upon the railway companies and Donovan, and on August 11, 1894, said companies answered the bill. Donovan did not answer the bill till March 6, 1901, and then by his answer confessed the same, and prayed that the relief asked for might be granted. On March 4, 1901, a supplemental bill was filed by the United States in said action, wherein it was stated that no service had ever been made upon Thompson or Erichsrud, and that no testimony had ever been taken in the cause; that O. C. Erichsrud had departed this life since the commencement of the action, leaving, surviving him, Anna Erichsrud, his widow, Addie J. Erichsrud, Mabelle Erichsrud, and Julia P. Erichsrud, his children and only heirs at law, and that on June 24, 1899, said heirs had joined in a deed of the land in question to Louis K. Woodwick. Process was prayed against these last-named defendants, and on May 2, 1901, Anna Erichsrud, Addie J. Erichsrud, Mabelle H. Anderson (formerly Erichsrud), Julia P. Remington (formerly Erichsrud), and Louis K. Woodwick answered the bill and supplemental bill. This action was commenced by the United States for the purpose of having the E. ½ of the N. W. ¼ of section 35, township 101, range 28, fifth P. M., Minnesota, restored to the United States, upon the ground that the land had been improperly certified to the state of Minnesota as a part of the indemnity lands of the land grant of July 4, 1866, made in aid of the Southern Minnesota Railway Company, for the reason that, prior to the passage of the land grant act of July 4, 1866, a homestead claim had been filed upon said land by one Luman Barkley. The material facts, as shown by the pleadings and proofs, are as follows: The land is within the indemnity limits of the act of July 4, 1866 (14 Stat. 87). The withdrawal of lands along that portion of the Southern Minnesota Railroad extension opposite said land was ordered August 23, 1866, and the order received by the district land office September 10th following. November 29, 1870, the Southern Minnesota Railroad Company selected the tract of land in controversy in lieu of land lost in the granted limits of the act of July 4, 1866, and the land department certified said land to the state of Minnesota for the benefit of said railroad company March 25, 1871. The state of Minnesota conveyed said land to said railroad company August 8, 1871. The land was sold under a mortgage foreclosure to A. P. Mann and H. H. Camman in February, 1877. It was conveyed by Mann and Camman to the Southern Minnesota Railway Company March 3, 1877. It was conveyed by said railroad company to

O. C. Erichsrud March 20, 1888. November 6, 1898, it was decreed by the probate court of Faribault county, Minn., to Anna Erichsrud, Addie J. Erichsrud, Mabelle H. Anderson, and Julia P. Remington, as heirs at law of O. C. Erichsrud, deceased. May 24, 1899, these heirs at law conveyed the same to the defendant Louis K. Woodwick, for the sum of $2,000 cash. On June 21, 1866, Luman Barkley, a person duly qualified to acquire lands under the homestead law of the United States, duly made entry as a homestead of the land in controversy, together with an adjoining tract of 80 acres in section 26. January 14, 1868, the entry of Barkley was canceled on account of the abandonment of the land by Barkley. June 6, 1868, Michael Donovan entered as a homestead the 80-acre tract in section 26, and subsequently received patent for the same. It was in pursuance of a contest initiated by Michael Donovan in 1867 that Barkley's entry was canceled. When Michael Donovan was notified by the local land office that Barkley's entry was canceled, he, about June 6, 1868, applied to enter the tracts of land of 80 acres each in sections 35 and 26, respectively. Donovan was allowed to enter the tract in section 26, but was informed by the local office that the tract in section 35, the land in controversy, had been withdrawn from sale for the reason that it was within the indemnity limit of the land grant contained in the act of July 4, 1866. Donovan made no written application in June, 1868, to enter the tract in section 35. When Donovan initiated the contest against Barkley in 1867, he signed a paper which was called an application to enter the land in controversy. This paper was in blank as to date, and it was undoubtedly to be properly filled out when Barkley's entry should be canceled, but when the entry was canceled this paper was destroyed, as it was claimed the land was not subject to entry for the reasons herein stated. Donovan used the land in controversy, in connection with his homestead in section 26, till 1885, when one Thompson went into possession of the same as assignee of a contract made by the Southern Minnesota Railway Company, and under and in pursuance of which title to the land was finally conveyed to Erichsrud. Donovan has not been in possession of the land since 1885.

John M. Gilman (Milton D. Purdy, on the brief), for appellant.

Burton Hanson and W. H. Norris, for appellees railway companies.

Andrew C. Dunn, for appellees Erichsrud, Anderson, Remington, and Woodwick.

Before SANBORN and THAYER, Circuit Judges, and CARLAND, District Judge.

CARLAND, District Judge, after stating the foregoing facts, delivered the opinion of the court.

The claim of the United States is this: At the time of the withdrawal of indemnity lands along the line of the Southern Minnesota Railway Company opposite the land in question, to wit, on September 10, 1866, there was a valid homestead filing on the land in question, made by Luman Barkley on June 21, 1866. That the cancellation of Barkley's entry on January 14, 1868, left the land in controversy open to selection by any legal applicant. Ryan v. Railroad Co., 99 U. S. 382, 25 L. Ed. 305; Wisconsin Cent. R. Co. v. Price Co., 133 U. S. 496, 10 Sup. Ct. 341, 33 L. Ed. 687. That as Michael Donovan applied to enter the land in June, 1868, and was wrongfully refused so to do by the local land office, that Donovan still is entitled to enter the land for the reason that the Southern Minnesota Railway Company did not select the same as indemnity land until November 29, 1870. There is no question but that the United States can com-

mence and maintain this action, so far as its right to do so is concerned. Van Wyck v. Knevals, 106 U. S. 360, 1 Sup. Ct. 336, 27 L. Ed. 201; U. S. v. San Jacinto Tin Co., 125 U. S. 273, 8 Sup. Ct. 850, 31 L. Ed. 747; U. S. v. Missouri, K. & T. R. Co., 141 U. S. 358, 12 Sup. Ct. 13, 35 L. Ed. 766; U. S. v. Oregon & C. R. Co., 101 Fed. 316; U. S. v. Winona & St. P. R. Co., 15 C. C. A. 117, 67 Fed. 969; chapter 376, § 2, 24 Stat. 556. But as it conclusively appears by the record in this case that the United States has no interest in the land itself, and that the whole object of the action is to restore the land to the United States in order that it may convey it to Donovan, the case falls within the rule announced in U. S. v. Beebe, 127 U. S. 338, 8 Sup. Ct. 1083, 32 L. Ed. 121, wherein Justice Lamar uses the following language:

"We are of the opinion that when the government is a mere formal complainant in a suit, not for the purpose of asserting any public right, or protecting any public interest, title, or property, but merely to form a conduit through which one private person can conduct litigation against another private person, a court of equity will not be restrained from administering the equities existing between the real parties by any exemption of the government designed for the protection of the United States alone."

The fact that this action is claimed to have been brought under the act of March 3, 1887 (24 Stat. 556), cannot affect this rule. The act referred to simply confers the right to bring this action after demand and refusal to convey. It does not say that the government shall recover in any event. If this had been the object of congress, it would have been easier to have devested the title by the act itself, without going into court, which, of course, could not have been done. Conceding, but not deciding, that the facts show that Donovan obtained a right to the land in controversy superior to the Southern Minnesota Railway Company, still we are of the opinion that these same facts disclose a case where the doctrine of laches should be applied. This land was certified to the state of Minnesota March 25, 1871, 22 years, lacking a few days, prior to the commencement of this action against the railway companies. The Erichsrud heirs and Woodwick were not brought into the suit by supplemental bill till March 4, 1901, 30 years after said certification. This action could have been commenced by the United States at any time after the date of certification, and Donovan's knowledge of his claim to this land must be held in this action to be the knowledge of the United States. Donovan was out of possession of the land 16 years prior to the commencement of this suit against the Erichsrud heirs and Woodwick. By section 5134, Gen. St. Minn. 1894, actions for the recovery of real estate are limited to a period of 15 years from the last possession of the plaintiff or his ancestor or grantor. This court in the case of Kelley v. Boettcher, 29 C. C. A. 14, 85 Fed. 62, exhaustively discussed the rules which govern the application of the doctrine of laches. Without repeating what is there said, we may state on the authority of the case referred to, and the authorities therein cited, that the settled rule is that courts of equity are not bound by, but that they usually act or refuse to act in analogy to, the statute of limitations relating to actions at law of like

character, and that, when a suit is brought after the statutory time has elapsed, the burden is on complainant to show, by proper averment and proof, that it would be inequitable to apply the doctrine of laches to his case.   We think that the evidence in this case not only does not show that it would be inequitable to apply the doctrine of laches, but, on the contrary, the evidence shows that in equity and good conscience it ought to be applied.   O. C. Erichsrud, as assignee of the contract held by Thompson, paid the balance due on the contract to the Southern Minnesota Railway Company, and received a deed for the land in controversy March 20, 1888.   At this time Erichsrud seems to have had no notice of the claim of Donovan.   Donovan was out of possession, and there was no claim of record.   On May 24, 1899, when Woodwick purchased the land from the Erichsrud heirs, paying $2,000 therefor, O. C. Erichsrud had not been served with subpœna, and the heirs were not parties to this action.   If Erichsrud was an innocent purchaser, then Woodwick obtained whatever title Erichsrud could convey.   This suit, at the time Woodwick purchased, was not lis pendens, as Erichsrud had not been served with subpœna. Murray v. Ballou, 1 Johns. Ch. 566; Union Trust Co. v. Southern Inland Nav. & Imp. Co., 130 U. S. 570, 9 Sup. Ct. 606, 32 L. Ed. 1043.   It is claimed that Woodwick cannot be an innocent purchaser for the reason that he or his grantors never had the legal title. Whether the certification of the land in question under the facts as they appear in this case carried the legal title, or whether Woodwick can be said to be in a technical sense an innocent purchaser, we do not care to determine.   He certainly occupies a position which appeals to a court of equity to such an extent as to justify this court in refusing relief after the statute of limitations at law has run.

The decree below was for the right party, and is affirmed.