STEVENS et al. v. GRAND CENTRAL MIN. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. October 13, 1904.)

No. 1,827.

1. MINING CLAIMS—CONSTRUCTIVE TRUST—RELOCATION BY CO-OWNER.

 The general rule that co-tenants stand in a relation to one another of mutual trust and confidence, that one will not be permitted to act in hostility to the others in respect to the joint estate, and that a distinct title acquired by one will inure to the benefit of all, applies with full force to the joint owners of a mining claim; and a co-owner who amends the location notice, relocates the claim, or otherwise procures the issuance of a patent in his own name, will hold the title in trust for all; nor will the trust be avoided, or its enforcement defeated, merely because a stranger to the original claim joins with such joint owner in the relocation, and acquires title jointly with him to the relocated claim.

2. SAME—FAILURE TO ADVERSE APPLICATION FOR PATENT.

 Rev. St. § 2325 [U. S. Comp. St. 1901, p. 1429], providing for the filing of adverse claims on the application for a patent to a mining claim, has reference to adverse claims arising from independent and conflicting locations, and not to a controversy between co-owners or others claiming under the same location; and the fact that one owner did not adverse the application of his co-owner does not affect his right to establish and enforce a trust in the patented claim.

3. EQUITY—DEFENSE OF LACHES IN FEDERAL COURT—FOLLOWING STATE STATUTE.

 A federal court of equity is not bound by a state statute of limitations, and, while it usually acts or refuses to act in analogy to it, will not follow such statute where unusual conditions or extraordinary circumstances render it inequitable.

**4. SAME.**

One of two joint owners of mining claims, without the knowledge of his co-owner and in fraud of his rights, joined with another in making a relocation of the property, and in applying for a patent therefor. On learning of such action the excluded owner brought suit to establish his interest in the amended claim, which was pending at the time of his death, and was thereafter dismissed without trial, at the instance of defendants, before the appointment of his administrator, who after his appointment instituted a new suit for the same purpose, which was dismissed without prejudice to another suit. Decedent's interest having been transferred to complainants, they, within nine months after the dismissal of the suit brought by the administrator, and within five months after the termination of the administrator's possession, instituted the present suit to recover such interest, and for an accounting. During all the time before the transfer to complainants, except the interval between decedent's death and the appointment of his administrator, one or the other was in the actual possession of the property, and performed the assessment work thereon required by law. *Held* that, under the unusual circumstances shown, complainants would not be denied relief in a federal court of equity on the ground of laches, regardless of the statute of limitations of the state.

Appeal from the Circuit Court of the United States for the District of Utah.

This was a suit in equity to enforce a constructive trust in favor of the appellants in a mining claim patented by the United States to Henry Kohl and Charles H. Blanchard, two of the appellees. The suit was commenced March 11, 1901, and the case made by the material allegations of the amended bill is substantially as follows:

Subject to the paramount title of the United States, one Timothy Kelly and the defendant Kohl were the joint and equal owners, entitled to the possession and in actual possession, of four mining claims in the Tintic mining district, Juab county, Utah. May 23, 1889, while this situation continued, the defendants, Kohl and Blanchard, for their own benefit, and for the purpose of excluding Kelly from any interest in these claims, amended the location notice of one of them, and restaked it upon the ground in such manner as to embrace therein portions of each of the four claims. They then caused the amended claim to be surveyed, made application October 1, 1889, at the United States land office, for the issuance to them of a patent therefor, and obtained a patent January 9, 1892. They fraudulently concealed the amended location, survey, and application for patent from Timothy Kelly until about January 23, 1891, when he evidently learned of these proceedings, although it is not expressly so stated, and, with others not named, commenced a suit in one of the territorial courts of Utah against Kohl and Blanchard to establish his interest in the amended claim. February 27, 1893, during the pendency of that suit, Timothy Kelly died. Thereafter, without his estate being in any manner represented, a dismissal of the suit was procured by Kohl and Blanchard, without a trial or determination of its merits. July 12, 1895, Daniel Kelly became administrator of the estate of Timothy Kelly, and in 1901 the estate was finally settled, and the administrator was discharged. October 1, 1899, the administrator, with others, commenced a suit in the district court of Juab county against the present defendants to recover the interest in the property held by Timothy Kelly in his lifetime, and to recover for ores extracted therefrom; but the suit was dismissed, without prejudice to a new one, about June 30, 1900. Up to the time of his death Timothy Kelly remained in the actual possession of said claims, working and developing the same, and doing upon each the annual work required by the laws of the United States and the rules and regulations of the mining district. Daniel Kelly, immediately after his appointment as administrator, went into possession of the claims on behalf of the estate of Timothy Kelly, and continued in such possession, working and developing the claims, until November 1, 1900, when the interest owned by

Timothy Kelly in his lifetime was conveyed to the complainants, who are now the owners thereof, and of all rights of action for ores extracted therefrom. The mining company acquired an interest in the patented claim from Kohl and Blanchard, with full knowledge of the rights of the complainants and their predecessors in interest; and, since the issuance of the patent, large quantities of valuable ores have been extracted from the claim by the defendants, for which they refuse to account. The complainants offer to pay their proportionate share of the moneys expended in procuring the patent, and pray that the defendants be declared trustees for the complainants in respect of the title to an undivided one-half of the patented claim, and be required to convey the same to the complainants, and to pay them for their share of the ores extracted.

The defendants severally demurred to the amended bill, assigning as cause that the bill made no case for equitable relief, and that the suit was barred by the statute of limitations of the state and by inexcusable laches. The demurrers were sustained, and this appeal is prosecuted from a decree dismissing the bill.

Harrison O. Shepard (Richard B. Shepard, on the brief), for appellants.

W. H. Dickson (A. C. Ellis and A. C. Ellis, Jr., on the brief), for appellees.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

VAN DEVANTER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The general rule that co-tenants stand in a relation to one another of mutual trust and confidence, that one will not be permitted to act in hostility to the others in respect of the joint estate, and that a distinct title acquired by one will inure to the benefit of all, applies with full force to the joint owners of a mining claim. A co-owner who amends the location notice, relocates the claim, or procures the issuance of a patent in his name, will not be permitted to thus exclude the other owners and appropriate the claim to himself, but will be declared to hold the right or title thereby acquired in trust for all. Lindley on Mines (2d Ed.) §§ 331, 398, 406, 728, 788; Turner v. Sawyer, 150 U. S. 578, 586, 14 Sup. Ct. 192, 37 L. Ed. 1189; Franklin Mining Co. v. O'Brien, 22 Colo. 129, 43 Pac. 1016, 55 Am. St. Rep. 118; Hallack v. Traber, 23 Colo. 14, 46 Pac. 110; Mills v. Hart, 24 Colo. 505, 52 Pac. 680, 65 Am. St. Rep. 241; Van Wagenen v. Carpenter, 27 Colo. 444, 61 Pac. 698; Brundy v. Mayfield, 15 Mont. 201, 38 Pac. 1067; Suessenbach v. Bank, 5 Dak. 477, 41 N. W. 662; McCarthy v. Speed, 11 S. D. 362, 77 N. W. 590, s. c. 12 S. D. 7, 80 N. W. 135, 50 L. R. A. 184; Gore v. McBrayer, 18 Cal. 582; Morton v. Solambo Copper Mining Co., 26 Cal. 527; Hunt v. Patchin (C. C.) 35 Fed. 816; Royston v. Miller (C. C.) 76 Fed. 50; John C. Teller, 26 Land Dec. Dep. Int. 484; Samuel H. Auerbach, 29 Land Dec. Dep. Int. 208. Nor will the trust be avoided or its enforcement be defeated merely because a stranger to the original claim participates with the unfaithful co-owner in the proceedings to wrongfully exclude his companions in interest, and jointly with him acquires the title to which they are entitled.

It is urged that the present suit cannot be maintained because the complainants' predecessor in interest, Timothy Kelly, did not adverse

the application of Kohl and Blanchard for a patent to the amended claim. The point is not well taken. In prescribing the manner of obtaining the government title to a mining claim, the statute directs that notice of the application be published and posted for the period of 60 days, and declares:

"If no adverse claim shall have been filed with the register and the receiver of the proper land-office at the expiration of the sixty days of publication, it shall be assumed that the applicant is entitled to a patent, upon the payment to the proper officer of five dollars per acre, and that no adverse claim exists; and thereafter no objection from third parties to the issuance of a patent shall be heard, except it be shown that the applicant has failed to comply with the terms of this chapter." Rev. St. § 2325 [U. S. Comp. St. 1901, p. 1429].

The statute has reference to an adverse claim arising from independent and conflicting locations of the same ground, and not to a controversy between co-owners or others claiming under the same location. Lindley on Mines (2d Ed.) § 728; Turner v. Sawyer, 150 U. S. 578, 587, 14 Sup. Ct. 192, 37 L. Ed. 1189; Doherty v. Morris, 11 Colo. 12, 16 Pac. 911; Malaby v. Rice, 15 Colo. App. 364, 368, 62 Pac. 228; Brundy v. Mayfield, 15 Mont. 201, 38 Pac. 1067; Suessenbach v. Bank, 5 Dak. 477, 501, 41 N. W. 662; McCarthy v. Speed, 12 S. D. 7, 80 N. W. 135, 50 L. R. A. 184; Hunt v. Patchin (C. C.) 35 Fed. 816, 820; Thomas v. Elling, 25 Land Dec. Dep. Int. 495, s. c. 26 Land Dec. Dep. Int. 220; Coleman v. Homestake Min. Co., 30 Land Dec. Dep. Int. 364. The purpose of the present suit is not to defeat the amended claim, or to establish a superior right under an independent and conflicting location, but to establish and enforce a trust in the amended claim arising out of the circumstances surrounding its origin and the proceedings by which it was carried to patent.

By the statutes of Utah the time for commencing an action for the recovery of real property is limited to seven years after the plaintiff or his predecessor was seised or possessed of the property, the time for commencing an action for relief on the ground of fraud is limited to three years after the discovery of the facts constituting the fraud, and the time for commencing actions not otherwise provided for—which are claimed to include an action to enforce a constructive trust—is limited to four years. Rev. St. 1898, §§ 2859, 2877, 2883. In the view which we take of the special circumstances of the present suit, it will not be necessary to inquire which of these limitations is intended to embrace actions like it in character.

Statutes of limitation, applied in courts of law, are inflexible and framed upon the theory that mere lapse of time, irrespective of other considerations, should bar the claim, while the doctrine of laches, applied in courts of equity, is sufficiently flexible to give reasonable effect to the special circumstances of any case, and rests not alone upon the lapse of time, but upon the inequity of permitting the claim to be enforced, because of some change in the condition or relations of the property or the parties. Hammond v. Hopkins, 143 U. S. 224, 250, 12 Sup. Ct. 418, 36 L. Ed. 134; Townsend v. Vanderwerker, 160 U. S. 171, 186, 16 Sup. Ct. 258, 40 L. Ed. 383; Ward v. Sherman, 192 U. S. 168, 176, 24 Sup. Ct. 227, 48 L. Ed. 391; Bryan v. Kales, 134 U. S. 126, 135, 10 Sup. Ct. 435, 33 L. Ed. 829. In the application of the doc-

trine of laches, courts of equity are not bound by, but usually act or refuse to act in analogy to, the statute of limitations relating to actions at law of like character. If unusual conditions or extraordinary circumstances make it inequitable to permit the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the analogous statute, the chancellor will not follow the statute, but will determine the case in accordance with the equities which arise from its own conditions or circumstances. When a suit is brought within the time limited by the analogous statute, the burden is upon the defendant to show, either from the face of the bill or by his answer, that unusual conditions or extraordinary circumstances exist which require the application of the doctrine of laches; and, when such a suit is brought after the statutory time has elapsed, the burden is on the complainant to show by suitable allegations in his bill that it would be inequitable to apply it to his case. Kelley v. Boettcher, 29 C. C. A. 14, 21, 85 Fed. 55; Ide v. Trorlicht, etc., Co., 53 C. C. A. 341, 352, 115 Fed. 137; United States v. Chicago, etc., Co., 54 C. C. A. 545, 116 Fed. 969; Boynton v. Haggart, 57 C. C. A. 301, 312, 120 Fed. 819; Wyman v. Bowman, 62 C. C. A. 189, 127 Fed. 257, 269; Brown v. Arnold (C. C. A.) 131 Fed. 723, 727; Richardson v. Olivier, 44 C. C. A. 468, 472, 105 Fed. 277, 53 L. R. A. 113.

It is insisted that the statute of limitations of Utah is, in terms, applicable to suits in equity, and therefore that the Circuit Court sitting in that state was required to act in obedience to the state statute, and not upon mere analogy to it. The rule is otherwise. While the courts of the United States are required by the statutes creating them to accept as rules of decision in trials at common law the laws of the several states, except where the Constitution, laws, and treaties of the United States otherwise provide, their jurisdiction in equity is to be exercised according to rules and principles applicable alike in every state, and cannot be impaired by the laws of the respective states in which they sit. Kirby v. Lake Shore, etc., Railroad, 120 U. S. 130, 7 Sup. Ct. 430, 30 L. Ed. 569.

The case made by the amended bill shows unusual conditions and extraordinary circumstances, which make it inequitable to forbid the maintenance of this suit because of the lapse of time. The wrongful proceedings to exclude Timothy Kelly from an interest in the property in controversy were begun by the unfaithful co-owner, Kohl, and his confederate, Blanchard, May 23, 1889, and resulted in the issuance to them of a patent January 9, 1892. These proceedings were fraudulently concealed from Kelly until about January 23, 1891, and then, by his suit against Kohl and Blanchard to establish an interest in the amended claim, he declared his opposition to their purpose to appropriate the property to themselves, and asserted his purpose to insist upon the rights of a co-owner. After his death that suit was dismissed under circumstances which prevented it from creating an inference of an abandonment of the rights asserted therein, or operating as a bar to another suit. In a suit against the present defendants brought in 1899 in the same interest, the insistence of the first suit was reiterated. That suit was dismissed, without prejudice to a new one, less than one year before the present suit was commenced. Excepting the interim of upwards

of two years between the death of Kelly and the appointment of an administrator of his estate, upon whom the right to the possession of his property, real and personal, was cast by the laws of Utah (Rev. St. 1898, § 3912), Kelly and the administrator, in turn, were in the actual possession of the property in controversy, working and developing the same in the assertion of the right of a co-owner, from May 23, 1889, when the wrongful proceedings to exclude Kelly from an interest therein were begun, until November 1, 1900, a period of over eleven years. The present suit was commenced March 11, 1901, within five months after that possession terminated. The title obtained through the patent is now held by Kohl and Blanchard, who perpetrated the fraud, and by the mining company, which took with full knowledge of the rights of Kelly and his successors in interest. These conditions and circumstances effectually negative any acquiescence by Kelly or his successors in interest in the attempted appropriation of his interest in the property, satisfactorily establish that there could not have been any reasonable belief on the part of any of the defendants that Kelly's interest had been abandoned by him or his successors in interest, and unmistakably show that Kelly, in his lifetime, and his administrator thereafter, were permitted to exercise such substantial rights of ownership over the property as were reasonably calculated to induce a relaxation in the efforts which otherwise should, and probably would, have been made to obtain a judicial determination of the rights of the parties in the patented claim. Ruckman v. Cory, 129 U. S. 387, 9 Sup. Ct. 316, 32 L. Ed. 728; Massenburg v. Denison, 18 C. C. A. 280, 287, 71 Fed. 618; Hayes v. Carroll, 74 Minn. 134, 139, 76 N. W. 1017. To hold that the case made by the amended bill, which stands admitted by the demurrer, is barred by laches, would be a perversion of the settled rule that the doctrine of laches is applied to promote, not to defeat, justice.

The decree is reversed, and the case is remanded to the Circuit Court, with a direction to overrule the demurrers to the amended bill, and to take such further proceedings as may not be inconsistent with the views herein expressed.