## ROSE EVERETT v. EMANUEL WALLIN.[1]

### October 21, 1921.

### No. 22,351.

**Public land — reference of claim special agent not a pending contract.**

1. Following the construction placed by the Federal decisions upon the proviso to section 7 of the act of March 3, 1891, relating to the issuance of patents for government lands, it is *held* that, after individual contests of a homestead entry had terminated, there was no pending contest of or protest against the entry, and that the reference of the entry by the land department to a special agent for investigation, did not amount to a contest or protest until a formal proceeding to cancel the entry was instituted by the United States.

**Fraudulent entryman entitled to patent.**

2. The fact that the entryman perpetrated a fraud upon the United States in making and establishing his entry, did not take the case out of the operation of the proviso, and, after the lapse of two years from the date of his final receipt, he was entitled to have a patent issued to him.

**Action lies — equitable maxim does not apply to case.**

3. Neither does that fact preclude plaintiff, who has succeeded to the rights of the entryman, from maintaining an action against defendant, to whom the patent was issued, to have the legal title to the land transferred to her. The maxim "he who comes into equity must come with clean hands," does not apply where a suitor asserts rights in land acquired from a third person by fraud at a time when defendant had no valid claim to the land and was himself a party to the fraud.

Action in the district court for Beltrami county to adjudge defendant the holder of the legal title of certain premises from the U. S. government in trust for plaintiff, and that he execute a deed thereof to

[1]Reported in 184 N. W. 958.

her. The case was tried before McClenahan, J., who made findings and ordered judgment in favor of plaintiff. From orders denying his motions for amended and additional findings and conclusions or for a new trial, defendant appealed. Affirmed.

*Middleton & Middleton,* for appellant.

*Marshall A. Spooner,* for respondent.


LEES, C.

By this action plaintiff seeks to have defendant adjudged to be the holder of the legal title to certain lands in trust for her and that he be required to execute a conveyance to her. The findings were in plaintiff's favor and defendant has appealed from an order denying his motion for a new trial.

These are the undisputed facts so far as material to the present litigation:

On November 12, 1903, one Peter Extram made a homestead entry upon which he offered commutation proof on August 6, 1906, and on August 17, 1906, obtained the receiver's final receipt and a certificate of final entry covering the lands in question. Extram and the defendant Wallin were fellow workmen, natives of Sweden and unfamiliar with our laws and in good faith agreed before the entry was made that Wallin should bear half the expense of making and perfecting the entry and obtaining title and that when title was obtained, Extram would convey a specified half of the land to Wallin.

Subsequently their agreement was reduced to writing and signed by both on December 10, 1903. Wallin carried out his part of the agreement and both parties made permanent improvements, each, on the portion of the land which was to be his under the terms of their agreement. We assume that the agreement was contrary to public policy and unenforceable. Anderson v. Carkins, 135 U. S. 483, 10 Sup. Ct. 905, 34 L. ed. 272; Hafemann v. Gross, 199 U. S. 342, 26 Sup. Ct. 80, 50 L. ed. 220; Bailey v. Sanders, 228 U. S. 603, 33 Sup. Ct. 602, 57 L. ed. 985; St. Peter Co. v. Bunker, 5 Minn. 153 (192).

In making final proof Extram testified that he had not theretofore sold, conveyed or mortgaged any portion of the land, and Wallin, who

was one of his witnesses, testified that he was not interested in the claim.

August 22, 1906, Extram conveyed the entire tract to plaintiff. November 23, 1906, Wallin filed a contest affidavit, attacking Extram's entry on the ground that it was fraudulently made and established. The ground of the contest was that he, Wallin, at all times had an interest in the land under his contract with Extram.

December 11, 1906, the commissioner of the general land office rejected the application for leave to contest the entry, advising the Crookston land office where it had been filed, that the entry would be referred to a special agent for investigation. March 29, 1907, the secretary of the interior affirmed the commissioner's action, and repeated that the entry would be referred to a special agent. June 19, 1907, the case was closed, leaving the Extram entry intact. February 11, 1907, one Norton filed an application to contest the entry on substantially the same charges as Wallin had made. June 16, 1907, the commissioner directed the Crookston office to hold the contest in suspense pending an investigation of the entry in behalf of the government. June 3, 1908, the order suspending proceedings was revoked, and the Crookston office directed to hear the contest. Due notice of hearing was given, but Norton did not appear and finally on February 4, 1909, his contest was dismissed for want of prosecution. April 29, 1909, the case was closed and the Extram entry again held intact. December 24, 1908, one Severtson filed a third application to contest the entry on the same charges. April 29, 1909, it was denied on the ground that it was not made within two years after the final certificate was issued to Extram. May 22, 1909, a special government agent reported to the general land office that he had investigated the matter and found that Extram did not make the entry for his own benefit alone, but partly for Wallin's benefit, and that before making final proof he had agreed to convey part of the land to Wallin. June 14, 1909, the commissioner directed the Crookston office to proceed against the Extram entry upon the charges in the special agent's report. June 17, 1909, such proceedings were begun and after a hearing and on June 16, 1910, cancelation of the entry was recommended. April 17, 1911, the commissioner affirmed the action of the Crookston office, the secretary of the interior sustained the action on an

appeal to him, and on November 11, 1911, the Extram entry was finally canceled, no patent having ever been issued thereon. In making his ruling the secretary said:

"There is no ground for thinking that this entry is protected by the proviso to section 7 of the act of March 3, 1891. The Department is not disposed to construe that act as to hold that the Government is at any time bound to issue a patent upon entry or certificates procured by fraud or suppression of facts. But under no interpretation of the act does it apply to this entry."

Reference to the direction that the entry be investigated was then made and the secretary proceeded to say:

"The proceeding here is the result of that order, so that since March 29, 1907, within two years after the final certificate, the entry has been under investigation of the land department and this proceeding here is the result of that investigation instituted by order of the Department of March 29, 1907."

The proviso to section 7 referred to by the secretary reads:

"After the lapse of two years from the date of the issuance of the receiver's receipt upon the final entry of any tract of land under the homestead * * * laws * * * and when there shall be no pending contest or protest against the validity of such entry, the entryman shall be entitled to a patent conveying the land by him entered, and the same shall be issued to him." Section 5113, Comp. St. 1918.

May 21, 1914, Wallin made application to enter the lands at the Crookston office and the entry was accepted and on January 5, 1916, a patent was issued to him and duly recorded. Then plaintiff brought this action, on the theory that by virtue of the proviso to section 7 she became entitled to the patent when the Norton and Severton contests were finally disposed of and Extram's entry declared to be intact. As we read his answer Wallin defended, on the ground that Extram had never complied with the homestead laws and was not entitled to the receiver's final receipt or to a patent based thereon; that his entry was being contested at all times after November 23, 1906, until it was finally canceled. There were allegations of fraud on the part of plaintiff's husband and agent in procuring the conveyance from Extram, which we

do not regard as important. There was also an allegation of plaintiff's knowledge of the fraudulent character of Extram's entry.

The case was disposed of, on the theory that, after the three individual contests had been terminated and the entry held intact, there was no pending contest or protest until after the commencement of the formal proceeding by the government for the cancelation of the entry and that the reference of the matter to the special agent for investigation did not amount to a contest or protest within the meaning of the proviso. The proviso has been twice construed by the Supreme Court of the United States and the views of the learned trial judge harmonize with such construction: Lane v. Hoglund, 244 U. S. 174, 37 Sup. Ct. 558, 61 L. ed. 1066; Payne v. United States, 254 U. S. 438, 41 Sup. Ct. 368, 65 L. ed. —. See also Jacob v. Harris, 42 Dec. Dept. Int. Pub. Lands, 611; Gildner v. Hall, 227 Fed. 704.

This construction entitled plaintiff as Extram's grantee to the patent issued to Wallin. In issuing it to him the land department misapplied the law and erroneously deprived plaintiff of the legal title, thus bringing the case within the rule stated in Clearwater County State Bank v. Ricke, 137 Minn. 438, 163 N. W. 793. The fact that Extram perpetrated a fraud upon the United States in obtaining the final receipt and certificate, is of no consequence, in view of the explicit holding in Payne v. United States, supra. At the end of two years after it was issued the land department had no jurisdiction to cancel the entry or withhold the patent. Authority to deal with any controversy over the validity of the entry, was then transferred to the courts, where the government might sue to cancel the entry or annul the patent had one been issued. Payne v. United States, supra. The right to bring suits of that nature is recognized both by statute and by repeated decisions of the Federal Supreme Court. Section 5114, U. S. Comp. St. 1918; Colorado Coal, etc., Co. v. United States, 123 U. S. 307, 8 Sup. Ct. 131, 31 L. ed. 182; United States v. San Jacinto Tin Co. 125 U. S. 273, 8 Sup. Ct. 850, 31 L. ed. 747; J. J. McCaskill Co. v. United States, 216 U. S. 504, 30 Sup. Ct. 386, 54 L. ed. 590; Exploration Co. v. United States, 247 U. S. 435, 38 Sup. Ct. 571, 62 L. ed. 1200.

Possibly the United States still retains such an interest in the land or

is under such a duty to Wallin as is sufficient to entitle the government to maintain a suit to cancel the entry for his benefit unless barred by the statute of limitations. Section 5114, supra. See United States v. San Jacinto Tin Co. supra; United States v. Beebe, 127 U. S. 338, 8 Sup. Ct. 1083, 32 L. ed. 121; United States v. Chicago Ry. Co. 116 Fed. 969, 972, 54 C.C.A. 545. That however is a matter in which action by the attorney general must be applied for and is something with which we are not concerned.

Whether in the present action defendant may attack plaintiff's title on the ground that the entry was a fraud upon the United States, is not open for consideration. The defense tendered by the answer was that plaintiff had been deprived of whatever title she got from Extram by virtue of the determination by the land department of the contests of his entry, and that, as a result, the land had been restored to the public domain and had again become subject to entry, so that defendant had gained the title by his subsequent entry and the issuance of the patent to him. This seems to have been the one defense relied on, and it was not good under the Federal decisions we have cited and are bound to follow.

Defendant urges that plaintiff cannot maintain this action because of the maxim that "he who comes into equity must come with clean hands."

It is not always easy to apply the maxim to a particular case. Of course it does not mean that a suitor shall have led a blameless life. Mr. Pomeroy says and many courts repeat his statement, that in general terms it means that he has been guilty of substantial misconduct in regard to or in connection with the matter in litigation, affecting in some measure the equitable relations subsisting between the two parties and arising out of the transaction involved. Pomeroy, Eq. Jur. § 399. The cases are collected and reviewed in an extended note to Langley v. Devlin, 4 A.L.R. 44. We think it clear that when one who has the legal title to land asks the aid of a court in vindicating his title against an adverse claimant, the latter cannot have him turned out of court because he got title by a fraud practiced upon the former owner, especially where as here the defendant himself was a party to the fraud. It may be said in the case at bar, as was observed in Teal v. Scandinavian-Am. Bank,

114 Minn. 435, 131 N. W. 486, that "plaintiff's hands in so far as concerns defendant are clean. * * * His (her) hands may perhaps be somewhat soiled as to others, but that fact does not inure to the benefit of defendant." It has been remarked that " 'clean hands' means a clear record with respect to the transaction with the defendant and not with respect to any third person." American Assn. v. Innis, 109 Ky. 595, 605, 60 S. W. 388. In that case it was held that the maxim could not be invoked by a junior patentee against a senior patentee on the ground that the senior patent was obtained by fraud. Another well considered case in point is Cochran Timber Co. v. Fisher, 190 Mich. 478, 157 N. W. 282, 4 A.L.R. 9. Plaintiff sued to remove a cloud upon its title arising from a deed to defendant from their common grantor. Defendant claimed that plaintiff had procured its deed by fraud. Defendant was the grantee in the second deed. The court was of the opinion that he was complaining of a fraud practiced upon his grantor at a time when he had no interest in the land and of which he was advised when he took his deed. It was held that the maxim had no application to such a situation. It was also held that the right of action for the fraud was personal to the grantor and not assignable, and in any event the deed to defendant did not purport to operate as an assignment of the grantor's personal right to sue for a cancelation of plaintiff's deed on the ground of fraud. The latter conclusion is well fortified by authority. See Graham v. Ry. Co. 102 U. S. 148, 154, 26 L. ed. 106; French v. Shotwell, 5 John. Ch. (N. Y.) 555, 565; Crocker v. Bellangee, 6 Wis. 645, 667, 70 Am. Dec. 489; Chicago v. Union Stockyards & Transit Co. 164 Ill. 224, 45 N. E. 430, 35 L.R.A. 281; Whitney v. Kelley, 94 Cal. 146, 29 Pac. 624, 15 L.R.A. 813, 28 Am. St. 106. Note to Marshall v. Means, 56 Am. Dec. 444; Stanek v. Libera, 73 Minn. 171, 75 N. W. 1124. It is not in conflict with the views expressed in Cornell v. Upper Michigan Land Co. 131 Minn. 337, 155 N. W. 99.

Granting that Extram perpetrated a fraud upon the government and that, under the doctrine of Hawley v. Diller, 178 U. S. 476, 20 Sup. Ct. 986, 44 L. ed. 1157, plaintiff stands in his shoes, we think the clear result of the cases cited is that defendant cannot resist the granting of equitable relief on the strength of the maxim he invokes.

Order affirmed.