## O'CONNOR v. CASCADEN.

(Fourth Division. Fairbanks. January 31, 1918.)

No. 2297.

**Joint Adventures ⬤→4(1)—Fraud—Equity—Mines and Minerals.**

Defendant and plaintiff staked a mining claim as colocators. Thereafter defendant fraudulently cut plaintiff's name off the stakes and substituted that of another as his colocator, and thereafter completed the location, with the substituted locator. Thereafter he secured a conveyance to himself of the interest represented by the substituted locator, worked the claim, and extracted large quantities of gold therefrom. On suit in equity by the original excluded locator for an accounting, *held*, defendant should convey to plaintiff an undivided one-half interest in the claim, and fully account to him for all gold and gold dust extracted therefrom.

This is an action in equity wherein the plaintiff seeks to recover from the defendant an undivided one-half interest in the Gold Dollar association placer mining claim, located in the now Tolovana mining and recording precinct, and to compel an accounting by the defendant of all gold extracted therefrom by the defendant and his lessees.

Le Roy Tozier, of San Francisco, Cal., and McGowan & Clark, of Fairbanks, for plaintiff.

Morton E. Stevens, of Fairbanks, for defendant.

BUNNELL, District Judge. Briefly the testimony of the plaintiff is that on the 30th day of November, 1914, at the point A, as shown on Defendant's Exhibit No. 2, plaintiff established stake No. 1 of the Gold Dollar claim, writing thereon his own name and the name of the defendant, at defend-

⬤→See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ant's request, as locators; that, besides plaintiff and defendant, there were present at that time and place J. J. Sherry and Albert Bell; that Sherry and Bell were witnesses, and each wrote his own name as such on stake No. 1; and that forthwith all four proceeded to cut out and blaze lines and to establish corners Nos. 2, 3, and 4. There is no dispute between the parties hereto that on the above date there was staked by two of the above four parties a claim known as the Gold Dollar; that the defendant was one of the locators, and that subsequently all the requirements of the law were fully complied with to make the Gold Dollar claim, as designated on Defendant's Exhibit No. 2 by the figure A–O (O being a survey point fixed by the evidence, but not lettered, and now given the letter O), O–G, G–J, J–E, and E–A, a valid association placer mining claim containing approximately 25 acres.

The plaintiff is strongly corroborated by Sherry and Bell on all important details in connection with the establishing of stake No. 1 at the point A, the cutting and blazing of the lines, and the placing of stakes Nos. 2, 3, and 4. There is but little conflict in the testimony concerning the relations of all the parties above mentioned prior to the placing of stake No. 1 of the Gold Dollar at the point A. About the middle of November the defendant and Sherry arranged to go on a stampede to the Tolovana. Plaintiff, a friend of Sherry, wanted to go, and this was entirely satisfactory to the defendant, who at the time said he believed Pat (plaintiff) to be a good man on a stampede. When Bell wanted to join the party, defendant consulted with Sherry, who said he thought it was all right. The defendant ordered the necessary supplies for the party. They traveled together, camped together, prospected together, and apparently were as harmonious a party of vigorous stampeders and prospectors as ever went forth to stake a claim. Admittedly plaintiff and Sherry were partners. Defendant denies that such a relationship existed between himself and Bell prior to the 16th day of December, 1914. If not actually partners before that date, there is evidence of a mutuality of interest as distinguished from plaintiff and Sherry. Prior to the staking of the Gold Dollar, Sherry and defendant staked the Leitrim. Plaintiff and Bell each wrote his name as a witness on

the initial stake. The testimony concerning practically all the subsequent and material acts is decidedly contradictory; the plaintiff, Sherry and Bell testifying one way, with the defendant flatly denying their statements. Bell testifies that he was the sole locator of the Silver Dollar claim and that he established the initial stake. The defendant testifies that the initial stake of the Silver Dollar claim was attached, tied to, or placed beside the initial stake of the Gold Dollar by Pat O'Connor, marked by O'Connor, and the names of. the locators were Pat O'Connor and D. H. Cascaden.

Denying the location of the Gold Dollar claim by plaintiff and defendant, the defendant testifies that it was located by himself and Bell, and that the initial stake was a stake known as the corner of No. 7. To support his contention, defendant has introduced in evidence the upper portion of a weathered stake claimed by him to be the initial stake of the Gold Dollar at point A. As an exhibit it is not entirely satisfactory. It is only the upper two feet of a stake. In places the writing thereon is very dim. On the one side appear the words "Gold Dollar" and figures "1320," with an arrow. The figures and words "40 acres" are very dim, while directly underneath, in smaller letters and apparently written rather recently, are the words "mining purposes." Farther down appear in dim writing the words "Gold Dollar." Below is the word "Locators," resembling in handwriting the words above, "mining purposes." Underneath, written diagonally, are the words "D. H. Cascaden" and "Albert Bell." Still below these words appears the word, "Witness," diagonally written and very dim. What, if anything, was written further down on the stake, the exhibit fails to disclose, for at this point it was sawed off. Nine inches from the top of the stake appear the words "Silver Dollar," very dim. The weathering on this side of the stake has developed a lighter color than that on the other sides, and indicates a more recent or different hewing. Another side contains the location notice of the Duncan claim by D. G. McCarty, very clear and distinct. On a third side, in fairly legible writing, are the words and figures "No." (figure mutilated by saw) "Cor. of 7 Bench. 1320 ft. to Cor. No. 2 of 7 Bench." This writing seems to be fresher than the words "Silver Dollar" and "40 acres," above mentioned. All the writing is with lead pen-

cil, and it is possible that the different condition in the state of its preservation is due in part to a difference in the pencils used.

The upper two feet of a stake which the defendant testifies was established at corner No. 2 and later moved to the point G from the point F on Defendant's Exhibit No. 2 is in evidence. On one side the writing with reference to the Gold Dollar is very distinct and comparatively recent. On another side appear the words "Golden Eagle," very dim, also an arrow, and the figures and words, quite plain, "1320 to post No. 3, Gold Dollar." The rest of the writing is rather dim, but seems to be a location notice of the Golden Eagle, signed by Albert Bell and some other person.

Geo. Walmbold, a witness for the defendant, testifies positively to having seen stake No. 2 of the Gold Dollar about the 1st of December, and that the locators were Dave Cascaden and Albert Bell. His testimony must be considered and weighed, taking into consideration the present very distinct and legible condition of the writing thereon with reference to the Gold Dollar claim, and the probability of his at least being entirely mistaken. Andrew Swanson also claims to have seen the same stake about the 1st of December, and he remembers seeing thereon the names of Dave Cascaden and Albert Bell as locators. Possibly he is also mistaken, for he testifies that on the same day he saw the initial stake at A, and does not remember whose names were written thereon as locators. James McDonough, during the latter part of December, claims to have seen stake No. 2, and remembers that the names of Dave Cascaden and Albert Bell were on this stake as locators. That is possible, but not probable. Bell's testimony concerning his name being on the location notice of the Gold Dollar as one of the locators is as follows:

"Q. Did you afterwards learn, Mr. Bell, that any interest in the Gold Dollar claim was in your name? A. Yes, sir.

"Q. When did you first learn that? A. I first learned that when Mr. Cascaden was making out papers to send off for the assessment work.

"Q. Do I understand by 'assessment work' that you mean the location work, or the annual assessment work? A. The location work.

"Q. Under the then existing law? A. Yes, sir.

"Q. Do you remember about what time that was, Mr. Bell? A. No, sir; I couldn't tell you.

6 A.R.—5

"Q. What was the occasion of your learning? You say that there were some papers made out. Where was it that those papers were made out, and what was it about? A. In the cabin that we built. Mr. Cascaden was making out the papers to send into Fairbanks. and when he came to the Gold Dollar claim I told Mr. Cascaden that I wasn't on the Gold Dollar claim; it was the Silver Dollar. He said I was mistaken; that it was the Gold Dollar. And at that time I thought perhaps I was mistaken. Afterwards I found out different.

"Q. Did you sign the papers? A. Yes, sir.

"Q. At whose request? A. Mr. Cascaden's."

Under the act of Congress of August 1, 1912 (section 129c, Compiled Laws of Alaska), it is provided:

"That no person shall hereafter locate, cause or procure to be located, for himself more than two placer mining claims in any calendar month: Provided, that one or both of such locations may be included in an association claim."

Referring to the above act, the defendant on cross-examination testified as follows:

"Mr. Tozier: Q. You were quite familiar with the mining law at that time, were you not? A. To some extent.

"Q. Well, will you tell the court why it is that your name was on the Leitrim claim, the Silver Dollar claim, and the Gold Dollar claim—three claims in one month? A. it seems to have been.

"Q. So that during the month of November, 1914, you attempted to locate three claims in that mining district and division, did you not? A. The fact is there were three claims staked.

"Q. Did you, or did you not, attempt to do so? A. The fact was that there were three claims staked. That is the answer."

If the plaintiff, Sherry, and Bell gave truthful testimony about staking the Gold Dollar on the 30th of November, then there would be no violation of section 129c of the Compiled Laws. If the defendant's testimony is true, and the Gold Dollar was staked in the name of the defendant and Bell, while the Silver Dollar was staked in plaintiff's and defendant's names, then the defendant was plainly trying either to violate or evade the positive provisions of the law. It would be doing the defendant an injustice to intimate that he was unfamiliar with the provisions of the law relative to the staking of placer mining claims.

Defendant attempts to show inconsistency on the part of the plaintiff because in May, 1915, as soon as plaintiff claims he discovered there had been a change of names on stake

No. 1, plaintiff failed to call this change of names to defendant's attention. Plaintiff's course of action seems to have been quite proper under the circumstances.

To believe the testimony of the plaintiff is to believe what is reasonable, logical, and probable. It is consistent with what the average prospector would do under the same circumstances. The plaintiff is also entitled to that full measure of consideration which, since the establishment of courts, has been accorded to the witness who, by his demeanor and manner of giving his testimony, convinces the court of the truthfulness of his statements.

In the case of Moore v. Crawford, 130 U. S. 128, 9 Sup. Ct. 448, 32 L. Ed. 878, Chief Justice Fuller quotes the following from 1 Story, Eq. Jur. § 187:

"Fraud, indeed, in the sense of a court of equity, properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another. And courts of equity will not only interfere in cases of fraud to set aside acts done, but they will also, if acts have been by fraud prevented from being done by the parties, interfere and treat the case exactly as if the acts had been done."

See, also, Lockhard v. Leeds, 195 U. S. 427, 25 Sup. Ct. 76, 49 L. Ed. 263, and Stevens v. Grand Central Mining Co., 133 Fed. 28, 67 C. C. A. 284.

By a fair preponderance of the evidence, the plaintiff has proved that after the time when on the 30th day of November, 1914, plaintiff established stake No. 1 of the Gold Dollar claim, writing thereon his own name and the name of D. H. Cascaden as locators, witnessed by J. J. Sherry and Albert Bell, and prior to May 1, 1915, the defendant erased, or cut, or caused to be erased or cut, from said stake the name of Pat O'Connor as one of said locators, and substituted therefor the name of Albert Bell. It therefore follows that the plaintiff is entitled to receive from defendant a deed for an undivided one-half interest in and to the Gold Dollar association placer mining claim. The plaintiff is also entitled to an accounting from the defendant for all gold and gold dust extracted from said claim, and, in the opinion of the court, 45 days is a reasonable time within which to make such an accounting.

Let findings of fact, conclusions of law, judgment, and decree in accordance with the views herein expressed be prepared and submitted accordingly.

---

⚖═See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes